## Speyer vs. Colgate and others.

Where there is no stipulation for credit or delay, on either side, in contracts for the sale of property, a delivery of it, and the payment of the price, are each conditions of the other, and neither party can sue for a breach without having offered performance on his own part. A mere readiness to perform is not sufficient.

The plaintiff being, in January, 1865, the owner of $40,000 in gold, which had been purchased for him by the defendants, as his brokers, entered into two agreements with M. for the sale thereof to him; by one of which he agreed to deliver to M. $20,000, at M.'s option, between the 1st and 20th of February, and by the other he agreed to deliver to him $20,000, at any time when called for, between the 21st day of January and the 20th of February. The gold was to be delivered, and the price paid, in New York. These contracts, signed by M., were sent by the plaintiff to the defendants, with directions to deliver to M. the amounts of gold contracted for. On the 30th of January, an agent of M. demanded of the defendants, and received from them, the $20,000 first deliverable. The $20,000 sold under the other agreement was not tendered by the defendants during the time specified in that agreement. *Held*, that it was the duty of the defendants to make such tender; and that the plaintiff having, by their neglect to do so, lost the benefit and advantage

Speyer *v.* Colgate.

of the sale, and the right to enforce the contract, he was entitled to recover of the defendants the damages he had sustained.

*Held*, also, that the plaintiff, on discovering that the defendants had failed to deliver or tender the gold, should have taken prompt measures to protect himself from further loss, by directing a sale of the gold on hand ; and that he having omitted to do so, the defendants were not liable for any loss occasioned by a subsequent fall in the price of gold.

A party subjected to loss by the misconduct of another has no right to unnecessarily enhance it for the purpose of aggravating the injury caused by the wrong. Good faith requires him to protect himself from needless loss, so far as that can be accomplished by reasonable efforts and attention. *Per* DANIELS, J.

APPEAL by the defendants from a judgment recovered on the report of a referee. (*S. C.*, *reported briefly*, 4 *Hun*, 622.)

*C. N. Tower*, for the appellants.

*James P. Lowrey*, for the respondent.

*By the Court*, DANIELS, J. The defendants were the plaintiff's brokers and agents in the city of New York, with whom he kept his financial accounts, and through whom he bought and sold gold and provided for payment of his drafts. Under his authority and direction they purchased for him in the month of January, 1865, $40,000 in gold. And the plaintiff entered into two agreements with B. Meyberg for the sale of the same gold. By one he agreed to deliver to Meyberg, who also contracted to receive it from him, $20,000 in American gold, at two dollars and five cents, not before the 1st of February, but after that up to the twentieth. And the amounts were payable and receivable in the city of New York. And by the other the same amount of gold was contracted to be sold, at the same rate or price, to be delivered at any time when called for during thirty days from the 21st day of January, 1865, the time expiring on the 20th of the following month. And by its

terms the price was payable, and the gold to be delivered, in New York.

The plaintiff sent these contracts, signed by Meyberg, to the defendants from Cincinnati, where he resided, in a letter dated the 23d of January, 1865.

He advised them, by letter, that he had sold the gold purchased for him, to .Meyberg, 20,000 at his own option from the 1st to the 20th of February, and 20,000 at Meyberg's option for thirty days from the 21st of January, at the price of 205 per cent. each, and requested them to deliver the amounts to the buyer as contracted, and charge the plaintiff with their usual rate of interest during the time they carried the amount for him. On the 30th of January, 1865, the defendants answered this letter as follows:

"We have received your favor 23d inst., with inclosures as stated, and we note your instructions in regard to contracts with Mr. Meyberg."

Meyberg delivered the agreement received by him from the plaintiff to Drake Brothers, who were brokers in Broad street, and they called upon the defendants for the gold agreed to be delivered by the contract dated the 21st of January, on the option of the purchaser. That was done on the 30th of that month, and the gold was delivered according to the terms of the contract. At that time William F. Drake, who presented the contract to the defendants, and received the gold upon it from them, informed Mr. Hoffman, of the defendants' firm, that there was another contract quite similar, for the same amount, and asked if he would deliver the gold on that. The reply was that he did not know; that it would be time enough to attend to that when he had instructions. He stated, further, that Mr. Hoffman looked over the paper and said, " Who is this Meyberg?" " I told him he was a merchant and customer of ours, and he had left these contracts with us to attend to for him. I stated that Mr. Meyberg left with us two contracts be-

tween himself and Mr. Speyer, each for $20,000 of gold; one was deliverable at Mr. Speyer's option, and the other at the option of Mr. Meyberg. I received the gold on the contract on Mr. Meyberg's option." The witness also testified that he was ready to receive the gold on the other contract; that he and his house were ready to receive it all the time the contract was open, and a week or ten days afterwards; but it never had been tendered to him. And it was not pretended by the defendants that they had ever tendered or offered the gold deliverable at the plaintiff's option, to the witness or either member of his firm, or to any person acting for them, or to Meyberg in person, who resided in Cincinnati, but was engaged in business as a dealer in hats in the city of New York.

By the contract remaining unperformed, the plaintiff, had the option to deliver the gold at any time between the 1st and 20th of February. It was clear and positive on that subject. But before he could entitle himself to the price to be paid for it, a tender or offer of it on his part was requisite. The rule upon that subject is, that where there is no stipulation for credit or delay on either side, in contracts for the sale of property, a delivery of it, and the payment of the price, are each conditions of the other, and neither party can sue for a breach without having offered performance on his own part. (*Per De-nio, J., in Tipton* v. *Feitner*, 20 *N. Y.*, 423, 425.) A mere readiness to perform is not sufficient for that purpose. (*Johnson* v. *Wygant*, 11 *Wend.*, 48. *Williams* v. *Healey*, 3 *Denio*, 363, 367. *Nelson* v. *Plimpton Elevating Co.*, 55 *N. Y.*, 480. And as no tender or offer of the gold was made on the plaintiff's behalf, he lost the benefit and advantage of the contract by means of that default. And if that was occasioned by the neglect of the defendants, they were rightly charged with the loss arising out of it, by the judgment which the plaintiff recovered.

The contract by which Meyberg bound himself to receive and pay for the gold, was indorsed by the plaintiff to the defendants, and sent to them in the letter of the 23d of January, already mentioned. They must, therefore, from that circumstance, as well as their reply sent to him, be deemed to have acquainted themselves with what it was necessary should be done in order to perform it on the part of the plaintiff; and to secure him its advantages, it was placed in their hands for the purpose of having them perform it for him, and they had the necessary amount of gold belonging to him for that object, and had notice from Meyberg's brokers, that the contract was in their hands to be attended to for him. Under these circumstances, the duty was clearly imposed upon the defendants to make the tender or offer necessary to secure the plaintiff the full benefit of the contract he had made for the sale of the gold they held for him. And by their letter advising him that they had noted his instructions in regard to the contracts, they in effect undertook to comply with his request that they would deliver the gold to the buyer as contracted. That was the clear effect of the two letters, under the circumstances. It was an agreement to do for him what should be required to constitute performance on his part. And the contract gave them ample time to do that. The obligation was clear and explicit, arising out of terms used which were free from all uncertainty. And for that reason they could not be relieved from performing it by the force of any usage or custom observed in their business. (*Wadsworth* v. *Allcott*, 2 *Seld.*, 64. *Wheeler* v. *Newbould*, 16 *N. Y.*, 392, 402. *Bradley* v. *Wheeler*, 44 *id.*, 496.)

It was claimed in their behalf that they were relieved from the obligation of tendering or offering the gold to Meyberg or his brokers, by the terms of a letter written them by the plaintiff on the 27th day of January, 1865. This letter stated that the plaintiff had advised Meyberg

to call on them for the $40,000 gold, "for which he is to pay the rate of 205, as per his contract sent to you with my letter of the 23d." There was nothing in it exonerating them from the performance of their duty, as that had been previously fixed, if he did not conform to the advice by himself calling for the gold. It did not direct or intimate that they should neglect to offer a delivery of it, in case he omitted to avail himself of the advice. The fact that it had been given him did not modify nor change, in any respect, the contract which had been made, particularly as the letter contained no intimation that Meyberg had promised to call, himself, for the gold. If he had called for it, of course that would have been sufficient for the justification of the defendant's omission, in case they had made the necessary delivery of it, or had offered to do so on their part. But he did not do so, unless the interview between Mr. Drake and the defendant Hoffman was equivalent to a call for this gold. That it could not very well be, because it occurred before the plaintiff was under any obligation to make the delivery. But if it could be considered a call for the gold, the defendants would not be relieved from liability by anything which then transpired. For they declined to comply with it, the defendant Hoffman stating, by way of reply, that it would be time enough to attend to that when he had received instructions. He was then notified that the contracts were left with the Drake firm to attend to for Meyberg, and this portion of the business remained in that condition. Before that, the defendants had been requested by the plaintiff to deliver the gold for him on both contracts, and they had undertaken to do it. And after the letter containing the statement that the plaintiff had advised Meyberg to call on them for the gold, they were informed that he placed his contracts in the hands of brokers to attend to them for him. They declined to deliver this gold when requested to do so, before the time for performance had

arrived, and no suggestion was made that Meyberg's brokers would afterward call for it. The defendants were simply notified that the contract was in their hands to attend to it, and that only imported a disposition to give such attention to it as its terms required, which was to receive and pay for the gold when it should be offered by the defendants. There was nothing from which the defendants, as business men, could consistently draw any other conclusion. And if they were justified in delaying an offer of performance during any portion of the time, on the expectation that the gold, which was only to be delivered on the plaintiff's option, would be called for by Meyberg, that circumstance afforded them no excuse for allowing the entire period mentioned in the contract to pass without any tender of a delivery on their part. When the time for doing that was about expiring, it must have been entirely evident to them that Meyberg did not intend to call for the gold as the plaintiff had advised him to do. That advice subjected him to no obligation to do that. He still had the right to stand upon the terms of the agreement he had made, which did not require him to pay without an offer of the gold he was to pay for. And from what had transpired, the defendants had no reason to suppose his rights to be in any respect different from that.

It was also insisted that the defendants were not obligated to tender the gold, because they received no copy of the plaintiff's agreement to deliver it. That was entirely unnecessary, as long as they received Meyberg's contract to accept and pay for it. And they were not only requested by the plaintiff, but undertook to make the delivery in his behalf, and had his gold in their hands to enable them to do it. The plaintiff's loss, it is clear, was created by their failure to discharge the duty they had voluntarily undertaken — and that was to deliver the gold within the time mentioned in the contract subscribed by Meyberg. The plaintiff was to profit

by that performance, and it could make no difference to the defendants whether he had bound himself for it or not.

But if it could possibly be otherwise, there was enough in the correspondence to inform the defendants of the fact that he had given Meyberg a contract of similar import, on his part. For by his letter of 23d of January he stated that he had sold Meyberg twenty thousand of the gold at his own option from the first to the twentieth of February. And that corresponded exactly with the contract of Meyberg which was inclosed, by which he agreed to accept and pay for it in that way. There was nothing in the case which excused the defendants from performing the obligation they had entered into for the delivery of this gold. It was an inexcusable neglect — for the consequences of which the plaintiff had the right to resort to them for indemnity.

After their default, they transmitted to the plaintiff a statement of their account with him, and as he failed to object to that, the defendants claimed that the omission discharged them from liability for the non-performance of their duty. This position is without the least color of plausibility for its support ; for the account did not state the fact that they had disobeyed his instructions and their own obligation. Before he could have approved of their misconduct it was necessary that he should have notice of it, and nothing of that kind was given by the account rendered. It would be a mockery of justice to hold that a cause of action could be extinguished in that manner after it had once been lawfully acquired. (*McKnight* v. *Dunlop*, 1 *Seld.*, 537–544.) There was no disposition on the part of the plaintiff to approve or acquiesce in the defendants' default. On the contrary, when it was discovered by him he at once intimated to them in very plain terms that he would expect them to satisfy him for the loss to which he had been subjected.

The proof showed that the price of gold rapidly depreciated after the defendants neglected to secure to the plaintiff the benefit of the agreement which Meyberg had entered into for its purchase. And so far as he was subjected to loss by this gold being retained in their hands after it should have been delivered to Drake Brothers for Meyberg, he was entitled to indemnity from them. But he was entitled to nothing beyond that. A party subjected to loss by the misconduct of another has no right to unnecessarily enhance it for the purpose of aggravating the injury caused by the wrong. Good faith requires him to protect himself from needless loss, so far as that can be accomplished by reasonable efforts and attention.

When the plaintiff discovered the failure of the defendants to deliver the gold to Meyberg, he had directed them not to sell that which was on hand, but to wait for advice. That discovery was made by the 3d of April, when he wrote his letter referring to their failure. The market was then falling, and continued to fall. After that, as he had directed the defendants not to sell, but to wait for advice, they held the gold remaining on hand under his orders, and consequently at his risk. He could have at once relieved himself from that risk by directing that the gold should be sold; but he did not do it, and the loss from that time resulted from this omission. Between the 3d of April, 1865, when the defendants' misconduct became known to the plaintiff, and the 11th of May, the time the gold was finally disposed of, according to the account rendered, its market value was very much reduced. That loss was included in the amount reported in the plaintiff's favor by the referee. No sound reason appears on which that portion of the amount allowed can be sustained. It was a loss occasioned by the plaintiff's own conduct in withholding the gold on hand from sale. Precisely what its amount

Speyer *v.* Colgate.

was, does not appear by the case, but as the book of gold exchanges was put in evidence for the year 1865, it can be accurately ascertained. The amount is claimed by the defendants to be $2,499.42 besides interest. That calculation was made on the price of gold on the 31st of March. But it should not extend any further than the 4th of April, for that was probably the earliest day on which the gold could have been directed to be sold after the plaintiff discovered that the defendants had failed to conform to his instructions. The depreciation in the price on the $12,898 of gold from that time to the 11th of May, with interest, should be deducted from the judgment.

The defendants' counsel claimed that a further deduction should also be made. But the propriety of making it does not seem to be supported by the evidence in the case.

The judgment should be reversed and a new trial ordered, with costs to abide the event, unless, within twenty days after notice of this decision, the plaintiff stipulates to modify the judgment by deducting the amount before referred to, including the interest allowed upon it. If such deduction be made, then the judgment should be affirmed without costs of the appeal.

Judgment accordingly.

[FIRST DEPARTMENT, GENERAL TERM at New York, May 3, 1875. *Davis, Brady* and *Daniels*, Justices.]