| 70 | 215 |
| 113 | 233 |
| 113 | 490 |

WALDO M. JOHNSON AND RICHARD O. WHEELER v. WILLIAM G. EMERICK, SURVIVING PARTNER, ETC.

*Partnership—Dissolution—Assumption of firm debts—Notice to creditors—Principal and surety.*

1. In the absence of *uncontradicted* evidence of the *fact* of *notice* to creditors, on the dissolution of a firm, that *one* of the partners has assumed and agreed to pay *all* of the firm debts, and where such fact must be proved by inferences from other facts proved, the question of such *notice* should be submitted to the jury in a suit by creditors against the *other* copartners to recover a debt so assumed, who, looking at *all* of the facts and circumstances, should say whether the plaintiffs had notice or knowledge of such agreement, and, if so, whether they have so dealt with *said* partner as to discharge the remaining partners from liability.

2. The following propositions are summarized from the opinion of Mr. Justice CHAMPLIN:

   *a*—The simple fact of notice of dissolution of a copartnership does not affect the *right* of a creditor to proceed against *either* or *all* of the partners to collect his debt; but it is *notice* that *each* partner is no longer the *agent* of the others in transacting the firm business.

   *b*—On the dissolution of a copartnership, the *authority* of each copartner to bind the others by any *new* contract or obligation ceases, and such want of authority is binding upon the creditors

of the firm, and others, from the time of notice of such dissolution.

*c*—After the dissolution of a copartnership, *each* partner is liable for *all* of the firm debts, the copartners becoming all principals as joint debtors.

*d*—An agreement by one copartner, on a dissolution, to assume and pay *all* of the liabilities of the firm, whose assets are transferred to him, places the partners in the relation of principal and surety, as between themselves, and destroys the equitable lien which each has after dissolution upon such assets to the extent of his liability for the debts of the firm, and for his *pro rata* share of the profits, and capital paid in by him.

*e*—Creditors, on receiving notice of the dissolution of a copartnership and the agreement of *one* partner to pay the firm debts, are bound to respect the suretyship relation thus created; and any *after* dealings with *such* partner must be had with due regard to the rights of the *others* as sureties, or they will be discharged.

*f*—The consideration for the express or implied assent of a creditor to an arrangement by the members of a debtor firm on dissolution, whereby one partner assumes and agrees to pay the firm debts, may be the obtaining of an additional security, better terms of payment, negotiable securities which the creditor may use in his business, or any other benefit; or it may be a *loss* of some right or some disadvantage suffered by the surety through the act of the creditor.

3. A letter from one copartner to creditors stating that he has purchased the interest of his copartner in the business, and will make some turn enabling him to adjust all matters against the firm satisfactorily, and assuring the creditors that they will be among the first that will have prompt attention, but not stating that he has *assumed* and *agreed to pay* all of the firm liab lities, does not raise a necessary inference of such an agreement.

Error to Saginaw. (Gage, J.) Argued April 19, 1888. Decided May 11, 1888.

*Assumpsit.* Plaintiffs bring error. Reversed. The facts are stated in the opinion.

*James B. Peter* (*Wisner & Draper,* of counsel), for appellants, contended as stated in the opinion, citing no authorities.

*L. A. Laughlin* (*Tarsney & Weadock*, of counsel), for defendant, contended:

1. Gerrish could not bind Emerick by a note given for the firm debt, after the dissolution, in the firm name; citing *Atwood v. Gillett*, 2 Doug. 206; *Pennoyer v. David*, 8 Mich. 407; *Goodspeed v. Plow Co.*, 45 Id. 237.

2. Emerick became a surety for the payment of the firm debts, and was released by plaintiffs' changing the form of the indebtedness and extending the time for its payment, thereby deciding to look to Gerrish *alone* for such payment; *citing Millerd v. Thorn*, 56 N. Y. 402; *Colgrove v. Tallman*, 67 Id. 95; *Smith v. Shelden*, 35 Mich. 42.

CHAMPLIN, J. In 1880 and subsequently the plaintiffs were partners, engaged in the business of wholesale grocers at the city of Detroit under the firm name of Johnson & Wheeler.

In August, 1880, William G. Emerick and Winfield S. Gerrish entered into copartnership, under the firm name of W. G. Emerick & Co., to carry on a general mercantile business at the village of Farwell, Clare county, Michigan. This firm dealt with the firm of Johnson & Wheeler down to the time of the dissolution of the firm of W. G. Emerick & Co., which occurred on October 15, 1881.

In September, 1880, Gerrish and Emerick entered into another partnership to carry on the same business at Pinconning, in Bay county, Michigan. This partnership was dissolved at the same time. By the terms of the dissolution, W. G. Emerick sold and transferred all of his interest in the partnership property to Gerrish, and Gerrish assumed and agreed to pay all the debts and liabilities of every character outstanding against both of said copartnerships.

On October 24, 1881, Gerrish wrote Johnson & Wheeler, informing them that he had purchased the interest in the Pinconning and Farwell business, and advising them that he should make some turn whereby he could be able to

adjust all matters against the concern satisfactorily, and saying, "and you shall be among the first that shall have prompt attention." Wheeler testifies that this letter was the first intimation he had of the dissolution.

Previous to his receiving this notice, and on October 22, the firm of Johnson & Wheeler had received two individual notes of W. S. Gerrish, each for $2,167.90, one at 60 and the other at 90 days, for the amount due the firm from W. G. Emerick & Co., and on the same day surrendered to W. S. Gerrish two acceptances of his, amounting to $1,500, which had been sent forward for collection to the Muskegon National Bank. The first of these notes fell due on December 24. On the 13th, Johnson & Wheeler wrote W. S. Gerrish, advising him that his note for $2,167.90 would be due on the 24th inst., and that it was payable at the Muskegon National Bank, Muskegon, where he would find the paper.

On December 22, 1881, Johnson & Wheeler wrote to W. S. Gerrish, Muskegon, acknowledging receipt of his from Bay City, and saying:

"We have recalled the note due 24th, and enclose statement, $2,181.99, for which we will make draft, as requested, on 24th, at 15 days' date, which, when due, we trust will find you *flush*. With your well-known energy, we hope you will soon see the end of your trouble, and be able to put yourself in positon again to be a customer for us."

The statement inclosed was as follows:

"DETROIT, 22 December, 1881.
"MR. W. S. GERRISH,
        "To Johnson & Wheeler, Dr.
                "102 and 104 Jefferson Avenue.

| 1881. December 24. To note 22 Oct., 60 days | $2,167 90 |
| Int. 18 days, and exchange | 14 09 |
| | $2,181 99 |

[In red ink.]   "December 24, 15 days, January 11, 1882."

It appears that this draft was again extended by a new draft, as on January 19, 1882, plaintiffs wrote W. S. Gerrish

that they had forwarded such "new draft for extension of former acceptance," and also advising him that his second note of $2,167.90 would on January 23 fall due. I quote from the letter as follows:

"When this was first given, you said you might not be able to pay the second note, but would certainly take care of the first. That has not been done yet, but the last draft falls due *after* the second note. We trust that you will be able to take them both up, but, in any event, we must hear from you by return mail, and we wish you would write us at once, on receipt of this, what you can and will do."

Later they again wrote as follows:

"DETROIT, 25 January, 1882.

"W. S. GERRISH, ESQ.,

"Muskegon.

"*Dear Sir:* We have to-day paid your note due 23d, and it makes things *squeak* these hard times. You have an acceptance for the same amount falling due January 27. If there is any possible way of your paying this, we want you to do it. When you gave this paper, you positively agreed to *pay* the first note. You did not do so, and this acceptance due 27th is an *extension of the first note.* Now keep your promise, and *pay it.* Yours truly,

"JOHNSON & WHEELER."

Six letters from Johnson & Wheeler to W. S. Gerrish follow this of the 25th, the last being of May 17, 1882, all pressing him for payment, and some threatening suit.

Gerrish died in the summer of 1882. Commissioners to hear claims against his estate were appointed, and plaintiffs presented to the commissioners for allowance the note due in 90 days, dated October 22, 1881, and the acceptance given in extension of the first note above referred to, which acceptance amounted, with the protest fees added, to $2,196.82. The commissioners allowed this acceptance, and added interest thereon, and they also allowed the note given for 90 days, and the interest thereon. The estate of W. S. Gerrish paid 10 cents on the dollar, and plaintiffs received, January 16, 1886, $466.68 from said estate.

On March 4, 1887, plaintiffs wrote defendant, claiming pay for the balance after deducting the amount received from the Gerrish estate. On the dissolution of the firm, Emerick removed to East Saginaw, Michigan, where he has ever since resided. This letter is the first notice or intimation that plaintiffs still considered him as liable for the partnership debt; and he had never heard from Johnson & Wheeler from the dissolution until the receipt of the letter. He testifies that, during the interim, he has not been in a financial condition to meet that obligation. Mr. Wheeler testifies that, after he received the dividend from the Gerrish estate, he made efforts to locate Mr. Emerick, but did not find where he was until the time he wrote the letter of March 4.

Upon the foregoing facts appearing in evidence, the circuit judge charged the jury, as matter of law, that the plaintiffs could not recover, and directed a verdict for defendant.

In inquiring as to the correctness of this direction of the circuit judge, it must be borne in mind that the declaration in the present suit is upon the common counts in *assumpsit*, and at the same time the declaration was served upon defendant he was also served with a copy of the account made out from the books of Johnson & Wheeler against the firm of W. G. Emerick & Co., which was duly verified by the affidavit of Richard O. Wheeler, under section 7525, How. Stat., in which he claimed that the account was an open account, and the balance due was $3,674.11. Upon this account, as served, was credited, under date of January 18, 1886, an item of cash, $466.68, which the evidence shows was the dividend received from the Gerrish estate. The declaration does not count upon the notes of October 22, 1881, or the acceptances given to extend the time of one of them.

The defendant claims that the facts of this case bring it within the principles enunciated in *Smith v. Shelden*, 35 Mich. 42.

Counsel for plaintiffs claim that this case is distinguished from that in two respects:

1. The plaintiffs, at the time of taking the two notes from Gerrish, October 22, were not aware of the dissolution.

2. They never knew, until the trial of the case, that there was any agreement between Gerrish and Emerick by which the former assumed the liabilities of the firm.

They concede that, as between themselves, the relation of Gerrish and Emerick was that of principal and surety, but insist that plaintiffs are not affected in their rights by this fact unless they were aware of it. They claim that the question as to whether plaintiffs had knowledge or notice of this relation between the partners was one of fact, and should have been submitted to the jury.

Upon the record it must be admitted that plaintiffs did not know of the dissolution of the firm until the receipt by them of the letter from Gerrish of October 24, which was two days, at least, after the notes had been given.

It is true that the simple fact of notice of dissolution of a firm does not affect the right of the creditor to proceed against either or all to collect his debt; but it is notice that each partner is no longer the agent of the others in transacting the business of the partnership. His authority to bind his copartners by any new contract or obligation ceases at the time of the dissolution, and such want of authority is binding upon the creditors of the firm and others with notice of the dissolution, from the time of such notice. After the partnership is dissolved, each is liable for all of the debts of the firm. They are all principals as joint debtors. The relation of principal and surety does not arise by virtue of the dissolution alone; but, if one agrees to assume and pay all the liabilities of the firm, this places them in the relation of principal and surety as between themselves.

Such agreement has also the further effect to destroy the equitable lien which each partner has after dissolution upon

the partnership assets to the extent which he is liable to pay the debts of the firm, and for his *pro rata* share of the profits, and capital paid in by him.   By his voluntary transfer of the assets he has parted with this lien, and trusted to the personal security and personal contract of the other partner or partners.    Standing in the relation of surety created by such agreement, if he is compelled to pay a firm debt, he is entitled to more than contribution ; he is entitled to collect the whole amount paid, from the other partners at once.

When this relation becomes known to the creditors of the firm, they are bound to respect it, and any dealing with the partners so assuming to pay the debts must be had with due regard to the rights of the other as surety, or he will be discharged.   Such discharge from liability is based upon the express or implied assent of the creditor, upon a sufficient consideration ; and a creditor, knowing of such relation, who goes on, and deals with the other partners with reference to the debt, may well be held to have assented to the arrangement, and to have accepted the responsibility and promise of the partner assuming to pay such debt.   This consideration need not be a money consideration.   It may be the obtaining of an additional security, better terms of payment, negotiable securities which the creditor may use in his business, or any other benefit ; or it may be a loss of some right or disadvantage suffered by the surety through the act of the creditor.

In this case, after the dissolution of the firm of W. S. Emerick & Co., Gerrish had no authority to give the notes of the firm for the debt payable at a future day.   Johnson & Wheeler wanted notes which they could put in bank and use as a credit.   By taking the individual notes and acceptances of Gerrish payable at a future time, they obtained this benefit.   This was a sufficient consideration for the assent, if the jury should find, under all of the circumstances, one was given.

As above stated, to effect a discharge by dealing with the partners who have assumed the debt, the creditor must have

known or been informed of the existence of such agreement. This brings us to inquire, what information did the letter of date October 24, 1881, convey to the plaintiffs? It advises them that Gerrish has purchased the interest in the partnership business. It further informs them that he shall make some turn whereby he can be able to adjust all matters against the concern. The letter does not say that he has assumed and agreed to pay all the liabilities of the firm. Is the only inference that can be drawn from what he does say that he has assumed and agreed to pay such liabilities? I think not. Although that might be a legitimate inference to be drawn when taken in connection with what subsequently transpired, yet it is not the necessary inference. Had there in fact been no such agreement between the partners, the letter would have been in the line of duty of Mr. Gerrish, and compatible with the fact that both were equally liable, and neither was surety for the other.

"The question always exists," says Mr. Parsons, "where there is neither express reservation nor express release, whether the whole transaction, illustrated by such circumstances as indicate the intention of the parties, falls within the one or the other of the principles above stated." See Pars. Partn. (2d ed.) 439, 440.

In the absence of uncontradicted evidence of the fact of notice to the plaintiffs of such agreement between the partners, and where such fact must be proved by inferences from other facts proved, the case should have been submitted to the jury, who, looking at all the facts and circumstances, should say whether the plaintiffs had notice or knowledge of the agreement between the partners made upon the dissolution of the firm, and, if so, have they so dealt with Gerrish as to discharge Emerick from liability? If the plaintiffs were chargeable with notice of the relation of principal and surety between the partners, there can be no doubt but that they have so dealt with Gerrish as to discharge Emerick. The extensions of the note first falling due, by an acceptance,

with interest and exchange added, were such acts, if done without Emerick's consent, as discharged him. This note was not given for a specified portion of the account upon the books. The consequence is that no action could have been maintained by plaintiffs against the firm of Emerick & Co. on the original account until the expiration of the last extension; hence Emerick's right to pay and sue Gerrish was deferred; and, if without his consent, he was discharged from liability from the whole account.

It follows from what has been said that the judgment must be reversed, and a new trial ordered.

SHERWOOD, C. J., MORSE and LONG, JJ., concurred. CAMPBELL, J., did not sit.