## LAWRENCE v. EVERETT.

*(Common Pleas of New York City and County, General Term.* December 18, 1890.)

SALE—ACTION FOR FAILURE TO DELIVER—TENDER OF PRICE.

An action by the purchaser for breach of a contract for sale of goods, in refusing to deliver the goods, cannot be maintained without a tender of the price. Mere readiness to pay is not sufficient.

Appeal from fourth district court.

Action by Samuel Lawrence against Eugene Everett. From a judgment for plaintiff, defendant appeals.

Argued before BOOKSTAVER and BISCHOFF, JJ.

*S. Mullen,* for appellant. *J. C. Rosenbaum,* for respondent.

PER CURIAM. This is an appeal from a district court. The pleadings in the action were oral. The plaintiff's complaint was for "damages for breach of contract on assigned claim." The answer was a general denial. The plaintiff's claim as made on the trial was that he purchased from defendant a certain line of goods for $66.10, on condition that defendant would sell him certain other goods which he expected to receive, to-wit, about 10 ounces of aigrettes at $6 an ounce; that defendant never delivered the aigrettes. The defendant denied that the bill of goods sold was sold on any condition whatever. The evidence on behalf of the plaintiff, as to the making of the contract, is as follows: "*Question.* State what the conversation was, and what you said to him. *Answer.* I went to see him about that time to buy some long white aigrettes. When I came in the place he said that I had never bought any goods of him before, and he did not see the reason why I should now. I said I would buy the goods if I could get the aigrettes. *Q.* He said that you had never bought any goods from him before, and there was no reason why you should buy them now? *A.* Yes, sir; and I said I will buy those goods if he would sell me the aigrettes. *Q.* What did he say? *A.* That he would. *Q.* Did you at that time purchase any goods from him? *A.* Yes, sir. *Q.* Those goods were bought only upon condition that the aigrettes were to be subsequently delivered? *A.* Yes, sir. *Q.* State whether those goods where purchased upon any condition? *A.* Upon the condition that I would get the aigrettes. *Q.* What was the condition? What was said at the time? *A.* It was said that if I bought the goods I would get the aigrettes. *Q.* When were you to get them? *A.* As soon as he received them. *Q.* How many aigrettes had he promised you? Was any promise made as to the amount? *A.* He expected about ten ounces. *Q.* Did you go into the market? What was your price with Mr. Everett for these aigrettes? *A.* About six dollars an ounce." And the evidence on his behalf as to the receipt of the aigrettes by defendant is as follows, one witness testifying: "*Question.* Did you have any subsequent conversation with him about the aigrettes having come here? *Answer.* Yes, sir; I did. Mr. Everett came to our store one day, and I told him, '· Where are the aigrettes?' He said: 'I am going right down to the express-office. They are here, and I will send them up to you, and you can break the seal.'" Another witness testified: "*Question.* State what was said while Mr. Everett was present. *Answer.* He was present in my place when we were talking together because we paid such a big price for these goods. He said: 'I will write a note to the express-office, and send the aigrettes down, and you will make up for what you paid for the skins.'" The defendant, being put on the stand, testified that there was no sale or contract to sell the aigrettes. His evidence on this subject is, in substance: "*Question.* You never promised specifically to sell aigrettes at $6 per ounce? *Answer.* No, sir; they were worth $35 per ounce. The plumage is what he wanted, and not the aigrette. They were worth $9 per ounce, and the short plumage for ladies' hats, they were worth $35 per ounce. He said, after he bought the goods: 'I have paid

you a big price.' I said: 'I do not know what you paid me; I want you to help me out.' He said; 'I paid you a big price, and I want you to sell me some aigrette plumage.' I said: 'Certainly, I will sell you anything I have. I will be pleased to.' I had no plumage in sight at that time. At that time aigrette plumage was $35 per ounce, and not $9; and, if he said I agreed to sell him for $6 an ounce at that time, it is erroneous. *Q.* You told him that you would deliver aigrette to him? *A.* That is absolutely false, at $6 per ounce. *Q.* What he says is not so? *A.* Yes, sir. *Q.* When he came to see you, what did he ask for? *A.* Aigrettes plumes, I believe. I admit that. *Q.* Those were the plumes that he referred to as purchasing for $12, afterwards? *A.* I do not know what he agreed to buy them for. *Q.* You did not sell him aigrette plumes? *A.* No, sir. *Q.* You sold him skins? *A.* Yes, sir. *Q.* He didn't come in for the purpose of buying skins? *A.* I do not know. *Q.* He came in and asked for aigrettes? *A.* Yes, sir. *Q.* And you told him that you did not have any? *A.* Yes, sir. *Q.* But you expected them? *A.* Yes, sir. *Q.* And, if any came in, he could get them? *A.* Yes, sir. *Q.* When you spoke to Mr. Lawrence about these aigrettes, as you say, you did promise him aigrettes when they came? Did you say to him at that time that he would have the first chance at aigrettes when they came? *A.* Yes, sir. *Q.* Was anything said about the price? *A.* No, sir. *Q.* Nothing about the price? *A.* No, sir." And the evidence as to the receipt by him of the aigrettes, and his statement at Freedman. & Co.'s is, in substance: "*Question.* Did you tell them that you had them in the express company's office? *Answer.* I told them I had, but there was a draft against them. *Q.* Did you ever take out that shipment of aigrettes, the one which you referred to, while up in the store of Freedman & Co., the one which there was a draft against? *A.* I never got any aigrettes? *Q.* When you came up to Freedman & Co.'s store, on Broadway, and Mr. Lawrence complained to you that he had paid such an enormous price upon condition that you would give him aigrettes, and that you didn't give him aigrettes, you said that you were sorry for him, and that you would make things all right? *A.* I would try to help him out in further purchases." The goods which were sold for $66.10 were delivered, and the purchase money paid at the time of the sale. The plaintiff obtained judgment below for $60.

From the amount claimed in the summons, $66.10, and the evidence adduced by the plaintiff tending to show an offer to return the goods sold and delivered, it would seem that the plaintiff originally placed the case in the aspect of an entire contract of sale of both lines of goods, and claimed to rescind the contract, and recover back the amount paid for the goods sold and delivered by reason of the breach in the non-delivery of the aigrettes. But from the facts that the judgment is for $60, and that the plaintiff introduced evidence as to the sum he was obliged to pay in the market, (the difference between the sum he paid and the sum which he says the defendant agreed to sell for being equal to the amount of the judgment,) it would seem that the case at the trial was put upon the theory of there being a separate and independent contract for the sale of the aigrettes, and a claim for damages for a breach of such contract by reason of the non-delivery of the goods. In whichever aspect the case is viewed, (and conceding that the evidence is sufficient to establish a contract for the sale of the aigrettes, according to either claim, which is exceedingly doubtful, and without passing on the question whether the claimed contract is void for uncertainty or not, or the question whether or not the defendant was bound to pay the draft against the aigrettes, whatever the amount, so as to procure the goods for delivery to the plaintiff,) there is an insuperable objection on the evidence to sustaining the judgment. Where goods are bargained for and sold, and there is no stipulation for credit or delay, no right of action accrues as for a breach of contract by reason of non-delivery without a tender of the purchase money. A mere readiness to pay is

not sufficient.  *Speyer* v. *Colgate*, 67 Barb. 192; *Nelson* v. *Elevating Co.*, 55
N. Y. 480.  In this case there is no proof of a tender to the defendant of the pur-
chase money of the aigrettes.  It follows, therefore, that the plaintiff has es-
tablished no cause of action arising out of their non-delivery.  The judgment
should be reversed, and a new trial ordered, with costs of appeal to abide the
event.