# MEARNS *v.* CHATARD.

---

PARTNERSHIP; RETIRING PARTNER'S LIABILITY; EVIDENCE; DAMAGES.

1. A statement by a retired partner, in an action by a firm creditor, that he was informed by a continuing partner that the new firm could have paid the debt, if it had been demanded, before it became insolvent, is hearsay evidence, and therefore incompetent.

2. A retiring member of a partnership the remaining members of which took its assets and assumed its liabilities is not released from liability for the failure of the firm to account for stock deposited with it during his membership, by the depositor's agreement with the new firm to leave the proceeds of the stock on deposit with it, for

an indefinite time. at less than legal interest, either under the rule holding that a retiring partner continues liable until expressly released by the creditor, or under the rule that he becomes a surety, and is absolved from liability by any act of the creditor which would release a surety.

3. The damages recoverable in an action against stockbrokers for the value of stock deposited with them and wrongfully pledged by them for their own use are not unliquidated, so as to prevent the rendition of a judgment therefor under rule 73 of the lower court.

4. A retired member of a firm of stockbrokers which before his retirement redeemed stock wrongfully pledged by it is liable to the owner thereof for its value upon its second wrongful pledge by the new firm; since his liability continues until the stock is accounted for to its owner, or he is released therefrom.

No. 3071.   Submitted December 12, 1917.   Decided January 7, 1918.

HEARING on an appeal by the defendant from a decree of the Supreme Court of the District of Columbia against a retired partner of a defaulting copartnership.          *Affirmed.*

The COURT in the opinion stated the facts as follows:

On May 2, 1913, the appellant, William A. Mearns, was a member of the partnership of Lewis Johnson & Company, this city, and continued to be until May 13, 1914, when he withdrew therefrom, the continuing members taking the assets and assuming the liabilities. On the first date appellee, plaintiff below, Eleanor A. Chatard, acting by her husband, Thomas M. Chatard, deposited with the partnership certain shares of stock valued at upwards of $30,000, with power to sell, hypothecate, or dispose of them "in any manner, and for any purpose to assign and transfer the same." Nearly all the stocks were sold and some of the proceeds accounted for. Plaintiff brought action for the balance of the proceeds and the value of the stock not returned. She recovered judgment in the sum of $29,-839.70.

Appellant claims he is not liable because, as he asserts, after he had withdrawn from the firm, the appellee, with knowledge of his retirement, and of the retention of the assets and assump-

tion of the liabilities by the new firm, entered into a binding agreement with that firm for the payment of what was then due to her by the old establishment, and that he was thereby released. He also urges that, even if this conclusion be not correct, the judgment is erroneous to the extent of $2,245.

*Mr. Walter C. Clephane* and *Mr. Alan O. Clephane,* for the appellant, in their brief cited:

*Bell* v. *Morrison,* 1 Pet. 351; *Booth* v. *Arnold,* 27 App. D. C. 287; *Bower* v. *Douglass,* 25 Ga. 714; *Brewster* v. *Hardeman,* Dudley (Ga.) 138; *Buxton* v. *Edwards,* 134 Mass. 567; *Cadens* v. *Teasdale,* 53 Vt. 469; *Dean* v. *Collins,* 108 N. W. 242; *Deane* v. *Echols,* 2 App. D. C. 522; *Dowzelot* v. *Rawlings,* 58 Mo. 75; *Eagle Mfg. Co.* v. *Jennings,* 40 Am. Rep. 670; *Fagg* v. *Hambel,* 89 Am. Dec. 561; *Feigley* v. *Whitaker,* 10 Am. Rep. 778; *Filippini* v. *Stead,* 23 N. Y. Supp. 1061; *Flannery* v. *Maine Red Granite Co.* 3 App. D. C. 395; *Gordon* v. *Frazer,* 13 App. D. C. 382; *Hackley* v. *Patrick,* 3 Johns. 536; *Harris* v. *Lindsay,* 4 Wash. C. C. 98; *Hart* v. *Woodruff,* 24 Hun, 510; *Hinsley* v. *Bagdad Sash Fact. Co.* 1 Tex. App. Civ. Cas. (White & W.) 718; *Hubbard & Gray* v. *Pelters,* 37 Tex. Civ. App. 453; *Iron Co.* v. *Cohen,* 113 Ill. App. 30; *Johnson* v. *Emerick,* 70 Mich. 215; *Luddington* v. *Bell,* 77 N. Y. 138; *Regester* v. *Dodge,* 6 Fed. 6; *Strauss* v. *Hensey,* 7 App. D. C. 289; *Woodworth* v. *Downer,* 13 Vt. 522.

*Mr. Charles Cowles Tucker, Mr. J. Miller Kenyon, Mr. Henry B. F. Macfarland,* and *Mr. Edward S. Bailey,* for the appellee, in their brief cited:

*Beardsley* v. *Root,* 11 Johns. 464; *Blew* v. *Wyatt,* 5 Car & P. 396; *Chase* v. *Vaughan,* 30 Me. 412; *Clark* v. *Billings,* 59 Ind. 508; *Daniels* v. *Cross,* 3 Ves. Jr. 277; *David* v. *Ellice,* 5 Barn. & C. 196; *Dean* v. *Collins,* —— N. D. ——, 9 L.R.A.(N.S.) 4; *Eagle Mfg. Co.* v. *Jennings,* 29 Kan. 469; *Early* v. *Burt,* 68 Iowa, 716; *Fagg* v. *Hamble,* 21 Iowa, 140; *Fowler* v. *Coker,* 107 Ga. 817; *Frentress* v. *Markle,* 2 G. Greene, 553; *Gordon*

v. *Johnson,* 186 Ill. 18; *Green* v. *Lake,* 2 Mackey, 162; *Hath-
away* v. *Burr,* 21 Me. 767; *Holden* v. *Trust Co.* 100 U. S. 72;
*Lodge* v. *Dicas,* 3 Barn. & Ald. 611; *Mearns* v. *Harris,* 45 App.
D. C. 539; *Miller* v. *Miller,* 7 Pick. 136; *Morrison* v. *Kendall,*
6 Ind. App. 212; *Railroad Co.* v. *Faunce,* 6 Gill. 68; *Reed* v.
*Tierney,* 12 App. D. C. 173; *Richards* v. *Bippus,* 18 App. D. C.
304; *Schmitt* v. *Greenberg,* 109 N. Y. Supp. 881; *Shanks* v.
*Dent,* 8 Gill. 120; *Strickland* v. *Barns,* 14 Ala. 511; *Walstrom*
v. *Hopkins,* 103 Pa. 118; *Wells* v. *Brigham,* 52 Am. Dec. 754.

Mr. Chief Justice SMYTH delivered the opinion of the Court:

We will consider first the argument that the appellant was
released. The record discloses that, soon after Mrs. Chatard
had placed her stock with the partnership, she and her husband
left for Europe and remained away for about a year and a half,
or until October 17, 1914. In the interim the partnership had
from time to time placed to her credit in a Baltimore bank dif-
ferent sums of money as dividends upon the stock. When they
returned, Mr. Chatard called at the office of the partnership,
and there learned for the first time that Mearns had withdrawn
from the firm. Henry, one of the new partners, who had also
been a member of the old firm, stated to Chatard that the firm
had disposed of all the stock and loaned the proceeds thereof in
New York, and that the moneys deposited to the credit of Mrs.
Chatard in the Baltimore bank were not from dividends, as had
been represented to her by the old firm, but for interest which
the firm voluntarily paid as the equivalent of the dividends
which would have been received if the stock had not been sold.
Later, Henry delivered to Chatard a statement of Mrs. Chat-
ard's account, showing a balance due on October 26, 1914, of
$30,934.57. On this date Mr. Chatard, still acting for his wife,
entered into an agreement with the new firm to the effect that
he would leave his wife's money on deposit with it, and that it
would pay interest thereon at the rate of 5 per cent from the
1st day of September, 1914. Subsequently, November 13,
1914, Mrs. Chatard withdrew $2,000, leaving a balance to her
credit of $28,934.57. On November 16, 1914, or twenty-one

days after the agreement was made, the members of the new firm, as individuals and partners, were adjudged bankrupts. Defendant alleges in his affidavit of defense that, if the plaintiff at the time of the agreement demanded her money, it would have been paid; but this encounters the fact, undenied, that the firm at that time was hopelessly insolvent. Nor is the situation affected by his further statement in the same affidavit that he was informed by Henry that the financial arrangements of the firm were such that, when the agreement was made, the firm could have paid Mrs. Chatard, if she had asked for her money. If he believed this, he does not say so. Anyhow it was only hearsay, hence incompetent, and for that reason adds nothing to his defense.

An inspection of these facts discloses that the successor firm did not agree to keep the money for a definite time and pay interest thereon. Neither did Mrs. Chatard agree to leave it on deposit for a definite time and receive interest thereon. The new firm had the right the next day after the agreement was made to tender the money due to Mrs. Chatard and be relieved from all responsibility for interest; and she, on the other hand, had the right at any time to demand payment of the money coming to her. Neither party had agreed to be bound for any specific length of time. Nor did the new firm in agreeing to pay 5 per cent interest obligate itself to do anything which it was not required to do before the agreement was made. The transaction was not one of banking, but of brokerage, and the firm was bound to follow the instructions of its principal. *Picard* v. *Beers,* 195 Mass. 419, 81 N. E. 246; *Speyer* v. *Colgate,* 67 Barb. 192; *Armstrong* v. *Bickel,* 217 Pa. 173, 66 Atl. 326. The stock was lodged with it "to sell, hypothecate, or dispose of, * * * and for any purpose to assign or transfer the same." There is nothing in this which indicates an intention to leave on deposit the money derived from the sale,—to loan it to the firm. The moment the stock was sold and the proceeds received, the money was due from the firm to Mrs. Chatard, and it was the firm's duty to turn it over, or at least offer to do so. And having done neither, it became liable for interest—damages—at the statutory rate; namely, 6 per cent. Code, § 1178 [31 Stat. at

L. 1377, chap. 854]; *Richards* v. *Bippus,* 18 App. D. C. 293;
*Holden* v. *Freedman's Sav. & T. Co.* 100 U. S. 72, 25 L. ed.
567. Moreover, when the firm loaned the money in New York
it wrongfully converted it and thereby became obligated for it,
with interest. *Merchants' Nat. Bank* v. *Williams,* 110 Md.
334, 72 Atl. 1114; *Harrison* v. *Perea,* 168 U. S. 311, 42 L. ed.
478, 18 Sup. Ct. Rep. 129. So, whether we consider that the
money was, or was not, wrongfully converted, the obligation to
pay the statutory rate of interest was the same. Besides, the
firm, by depositing interest in the Baltimore bank to the credit
of Mrs. Chatard, recognized its obligation to pay her interest
upon the money in its hands. By the agreement Mrs. Chatard
was not advantaged in the least, nor was the appellant injured
thereby. Both stood after the agreement precisely where they
were before it was made.

It remains then to be considered what effect, if any, this
agreement had in law upon Mearns' liability to Chatard. The
authorities bearing upon this question may be arranged under
two categories. The first holds that the retiring partner con-
tinues liable unless *expressly* released by the creditor; and the
second, that he becomes a surety for the payment of the debt
by his former associates, and is absolved from all responsibility
in connection with it by any act of the creditor which would
ordinarily release a surety. The cases in the first category are
illustrated by the following statement in an elaborate note to
*Dean* v. *Collins.* 9 L.R.A.(N.S.) 77: "A retiring partner is
not discharged from liability to a firm creditor, therefore, by
any agreement between partners for the payment of the debts
of the firm by one or more of them, unless the creditor has as-
sented thereto, and agreed to look to the other members of the
firm for payment of his debt." And those in the second cate-
gory are exemplified by this excerpt from the same note: "The
rule, apparently based upon *Oakeley* v. *Pasheller,* 4 Clark &
F. 207, 7 Eng. Reprint, 80, 10 Bligh, N. R. 548, 6 Eng. Re-
print, 202, and which seems to be sustained by the weight of
authority in England, and which is sustained by authorities
entitled to high respect in America, and which seems to be there
growing in favor, is that, when a firm is dissolved, and one of

the partners takes the assets and assumes the liabilities, the other partner thereafter occupies the position of a surety, not only as between the partners themselves, but as to all others who have had dealings with the firm to whom notice of the new contract has been brought." [p. 88.] According to the rule of the first, Mearns was not released, because Mrs. Chatard did not assent to the arrangement between him and his partners by which they were to take the assets of the firm and become solely liable for its debts. Nor did she agree "to look to the other members of the firm for the payment of his [her] debt." With respect to the doctrine of the second class, the decisions of this court definitely settle what acts upon the part of a creditor will release a surety. In *Reed v. Tierney*, 12 App. D. C. 173, it is said: "The distinction is between an agreement for an extension for a definite period, and for which interest is to be paid, and an agreement for an indefinite extension of time. In the former, the agreement on the part of the debtor is to retain the money, as upon a new loan, and pay interest therefor for the certain time, and on the part of the creditor to forbear his right to enforce payment during the extended time; and this constitutes a valid agreement. While, on the other hand, an agreement for an indefinite extension may be terminated at any time by either party, at his mere will and option, and therefore does not constitute a binding contract." And the court approves the following extract taken from *Green v. Lake*, 2 Mackey, 162: "The general rule on this subject undoubtedly is that a contract between the creditor and the principal debtor, for forbearance for a limited time, shall be a defense to the surety, but it is necessary to show a binding agreement which absolutely ties the hands of the creditor. If the promise is made without any consideration at all, it does not bind him.   *   *   * For example, if the creditor simply agrees to extend the date indefinitely on payment of legal interest, that is no more than he would be entitled to without any agreement; he receives no consideration, and such promise is not binding." See also *Walker v. Washington Title Ins. Co.* 19 App. D. C. 578- 588. The agreement, then, which would release Mearns under the circumstances of this case must be one providing "for an exten-

sion for a definite period" and requiring the payment of something more than legal interest. The contract that Henry made with Chatard was not for a definite period, did not provide for the payment of more than legal interest, and was not therefore binding. This being so, it did not have the effect of releasing Mearns, even though we consider him a surety. Other jurisdictions hold the same doctrine. In *Campbell* v. *Floyd*, 153 Pa. 84, 25 Atl. 1033, a partner had retired from a banking concern, the remaining partners assuming the debts and continuing the business. Plaintiff, a depositor, with full knowledge of the facts, continued his deposit with the new firm, and received from it interest at the same rate which had been previously agreed upon. The court, assuming that the retired partner bore the relation of surety to the depositor, said: "Mere forbearance, however prejudicial to the surety, will not release him. * * * Nor will indulgence accompanied by payment of interest by the debtor and a promise of punctuality in the future have that effect if the creditor's hands are not tied. * * * And while a surety may be discharged by an agreement between the creditor and the principal debtor for an extension of the time of payment, the essential elements of a contract must be present. Not only must the agreement be upon a sufficient consideration, but the time of payment must be definitely fixed. Otherwise the surety will not be discharged." Citing authorities. To the same effect, see *Eagle Mfg. Co.* v. *Jennings,* 29 Kan. 657, 44 Am. Rep. 670; *Fagg* v. *Hamble,* 21 Iowa, 140, 89 Am. Dec. 561; *Johnson* v. *Emerick,* 70 Mich. 215, 38 N. W. 223. Appellant concedes the soundness of this doctrine, for he says: "It is not contended in this case that there was any agreement for extension of time such as would preclude a suit for the money by Mrs. Chatard under the new agreement. The claim in this case is based upon a new agreement, to which the surety in this case was not a party. Such an agreement founded upon valid consideration discharges the retired partner." The agreement then, according to the appellant, must be founded "upon valid consideration," but there is no such consideration here. Therefore the agreement is without effect.

Finally it is urged that the court erred in the sum which is included in its judgment for thirty shares of stock which had not been sold. Appellant says there was no definite evidence of the value of this stock; consequently, the damages with respect to it are unliquidated, and no judgment can be rendered for such damages under rule 73 of the lower court. *Deane* v. *Echols,* 2 App. D. C. 522. We think this discloses a misapprehension of the facts. When appellee gave the firm the right to hypothecate or dispose of the stock in any manner, and for any purpose to assign and transfer the same, it was done for the use and benefit of Mrs. Chatard. The authority was granted so that, if the stock was sold, it could be properly assigned, or if Mrs. Chatard, traveling in Europe, needed to borrow money on the stock, her brokers, the partnership, might make the necessary arrangement. It would be absurd to say that, under the circumstances disclosed by the record, it was the intention of Mrs. Chatard to authorize the firm to pledge the stock for its own benefit, or for the benefit of anyone else but the owner. Therefore, when the firm on the 9th of May, 1913, seven days after it had come into the firm's possession, pledged the stock for its own use, it did that which it had no right to do, and became then and there liable for its value. *Eureka County Bank* v. *Clarke,* 6 C. C. A. 571, 130 Fed. 325; *Schwarz* v. *Kennedy,* 142 Fed. 1027; *Strickland* v. *Burns,* 14 Ala. 511. The stock was worth at that time $91.50 per share, or in all $2,745; for the affidavit of merit so alleges, and it is not denied. It appears that the firm redeemed the stock from the first pledge, but that the new firm rehypothecated it on July 16, 1914. Appellant says he is not responsible for this last hypothecation. To this we cannot assent. The liability which he assumed as a member of the old firm, when the stock was first placed with it, continued until the stock was accounted for to its owners, or he was released therefrom. *Blew* v. *Wyatt,* 5 Car. & P. 397; *Daniel* v. *Cross,* 3 Ves. Jr. 277, 30 Eng. Reprint, 1009, 3 Revised Rep. 94; *Bernhard* v. *Torrance,* 5 Gill. & J. 383, 30 Cyc. 608; *Easton* v. *Wostenholm,* 70 C. C. A. 108, 137 Fed. 524; *Neal* v. *Smith,* 54 C. C. A. 226, 116 Fed. 20. It was not accounted for, and we have found he was not released; therefore he was

liable for it either as of the date of the first or the second hypoth-
ecation. Appellee could have selected one or the other. She
chose the latter, and thereby, according to appellant's own argu-
ment, claimed $105 less than she would have been entitled to if
she had taken the first. Of this appellant cannot complain.

The judgment is right, and is affirmed, with costs.

*Affirmed.*

Mr. Justice HITZ, of the Supreme Court of the District of
Columbia, sat with the Court in the hearing and determination
of this appeal, in the place of Mr. Justice VAN ORSDEL.