## CULLIGAN *v.* ALPERN.

1. PARTNERSHIP—EVIDENCE—REPUTATION.

It is not error, in an action on a promissory note, brought by an accommodation indorser who had paid the note, to admit in evidence for the purpose of showing the defendant's liability as a partner, testimony that the general understanding in the community was that the defendant was a member of the firm, the partnership having been shown to have at one time existed, and been subsequently dissolved without notice to the indorser or the public.[1]

2. SAME—CITY DIRECTORIES AS EVIDENCE—ESTOPPEL.

In such action city directories containing the defendant's name as a member of the firm, are admissible, not to prove the creation of the partnership, but to show how much notice had been given the public of its termination.

3. SAME.

Under evidence that an admitted partnership had been dissolved without notice to the public, and that plaintiff in-

---

[1] As to necessity of actual notice of retirement of member of firm to relieve retiring member from liability on obligation renewed after his retirement, see note to *Gross* v. *Breckinridge Bank* (Ky.), 4 L. R. A. (N. S.) 800.

dorsed a note[1] at the request of the managing partner of the firm, relying on its continued existence, sufficient evidence of liability by estoppel is shown as against the retired partner.

4. TRIAL — DIRECTING VERDICT — REQUEST BY BOTH PARTIES FOR DIRECTION OF VERDICT—QUESTIONS OF FACT AND LAW.

In an action where the evidence is undisputed and the parties both ask the court for a directed verdict, neither indicating a desire to submit the case to the jury, it is not error to determine the questions as matter of law.

Error to Alpena; Emerick, J. Submitted January 20, 1910. (Docket No. 55.) Decided March 5, 1910.

Assumpsit by Patrick Culligan against Morris Alpern upon a promissory note. A judgment for plaintiff on a verdict directed by the court is reviewed by defendant on writ of error. Affirmed.

*Charles R. Henry*, for appellant.

*O'Brien & Francis*, for appellee.

MOORE, J. The questions involved in this proceeding are so clearly stated by the trial judge in his direction to the jury that we quote therefrom as follows:

"The action is one brought by Patrick Culligan against Morris Alpern. For a number of years prior to April 10, 1902, Casper Alpern and his stepson, Morris Alpern, had been associated as copartners in the fish business here in this city under the firm name of Alpern & Co. On that day they dissolved that copartnership, and the copartnership relations never thereafter existed between them. That dissolution was evidenced by a written contract which has been put in evidence. This contract provided that Morris Alpern should be paid certain sums, amounting, I think, in the aggregate, to $3,600, evidenced by certain notes, due from time to time. It seems that those notes were paid, and it would make no difference whatever whether they were or not, the partnership that day ceased, and thereafter the only relation which Mr. Morris

---

[1] The record shows that the note was executed in the partnership name.—REPORTER.

Alpern had to his stepfather, Casper Alpern, his former copartner in the firm of Alpern & Co., was that of a creditor.

"That being the condition of affairs between them, on the 8th day of January, 1906, Casper Alpern applied to the Alpena County Savings Bank for a loan of $300. Mr. Culligan was president of the bank. The note would not be accepted or discounted by the bank unless it was indorsed by some responsible party, and Patrick Culligan, at the request of Casper Alpern, did indorse the note and became liable thereon as indorser; that is to say, his contract was that if the note was not paid at 'maturity, and he was notified of its dishonor, that he would pay it. The note was renewed. The renewal note was dishonored. Mr. Culligan's liability was fixed by notice of protest, as we term it, and he paid the note, and then he brought this suit against Morris Alpern. Morris Alpern has always denied liability upon the note, from the very time of its being brought to his attention, on the ground that at the time of its inception he was no longer a partner and was not liable thereon. And he was not liable, gentlemen, upon that note because of the fact that he was a partner, for he was not. He can only be held liable upon the ground of estoppel, that he has permitted himself to be held out as a continuing member of that firm.

"Now, the facts about that are these: Casper Alpern, although Morris had retired on the 10th day of April, 1902, continued to do business himself, alone, as sole owner, but under the name of Alpern & Co.; and there is one of his cards that he used in his business, in this case, which Miss Millie Alpern testifies were printed in December, 1903. 'Alpern & Company,' this business card says, 'Casper Alpern, Sole Owner, Alpena, Michigan.' But the name that he continued to do business under was Alpern & Co. The evidence has been put into this case of the city directories for the years 1903 and 1904, and 1905 and 1906. In each of these directories Morris Alpern was carried as a reputed member of the firm of Alpern & Co. For instance, for the year 1906, I find here in the directory before me, *first*, all the individuals under the head of 'Alpern.' 'Alpern, Morris.' Then in parenthesis after that '(Alpern & Company) Fish. 223 North Second Avenue. Boards 108 East Dunbar.' A little lower down I find, 'Alpern & Company, Casper;' then in parenthesis '(Casper & Morris Alpern) Wholesale Fish, North Second Avenue, near the bridge.'

"It has been put in evidence here in this case that it was the general reputation in the city of Alpena that Morris Alpern continued to be and remain a member of the firm of Alpern & Co. The evidence is, in my judgment, conclusive upon that point, that that was the established reputation of Morris Alpern here in the city to such an extent, upon that branch of the case, that, should the verdict of the jury be contrary to the finding upon that one question, I would promptly set it aside. Now, if Morris Alpern, after retiring from the firm of Alpern & Co., knew that his stepfather continued to do business under the name of Alpern & Co.—and he must have known it; he has established it conclusively here today by evidence showing a business carried on of considerable volume and of general publicity—if he knew that, I think we would have a right to infer that he in fact must have known that it was the general reputation in this community that he remained a member of that firm; and in that case those who dealt with that firm upon that belief, and in reliance upon that fact, would have a right to recover against him. The only question that I have had any doubt about in the case, after an examination of the law and hearing the evidence this morning, is whether Mr. Culligan had shown himself possessed of a knowledge of that reputation before the transaction in question. It is possible, gentlemen, that would raise a question of fact which I should submit to you. But on the whole, and from the position of the counsel, one wishing a verdict directed for the plaintiff and the other wishing it directed for the defendant, I have concluded to pass upon it as established from the evidence, and I direct you to find a verdict for the plaintiff for the amount due upon this note. That would be the amount of the note, with interest, less the payment that has been made."

He then directed a verdict. The case is brought here by writ of error.

Counsel for appellant insists here, as he insisted in the court below, that a verdict should have been directed for appellant. It is claimed that error was committed in allowing plaintiff to testify to the general understanding in the community that the members of the firm of Alpern & Co. were Morris Alpern and Casper Alpern. The objection was that the testimony was immaterial, not that

the witness was incompetent to give it. Later, when it appeared that some of his information was obtained from Casper Alpern, who is now dead, the testimony as to what was learned from him was stricken out because within the knowledge of the deceased partner.

Reference is made in the charge to the city directories. It is said they should not have been admitted, as Morris Alpern testified that he had not seen them, and did not know what they contained about the firm of Alpern & Co. These directories were published yearly, and were known as "Polk's Alpena City Directories," and were in general use by the public who had occasion to use directories, and were the only directories published in Alpena. It should not be forgotten that defendant testified, and the fact was established, that he at one time was a member of the firm of Alpern & Co., and that Casper Alpern was the active manager of the firm, and that after the partnership was ended the name of the firm was not changed. He also testified that he had taken no method of advising the public that his connection with the firm had ceased. We think the directories were competent, not as substantive proof of the creation of the partnership, but as bearing upon the question of how much notice had been given of its termination.

We quote from the brief of counsel:

"The circuit judge was in error in his premises when he stated:

" 'It has been put in evidence here in this case that it was the general reputation in the city of Alpena that Morris Alpern continued to be and remain a member of the firm of Alpern & Co. The evidence is, in my judgment, conclusive upon that point that that was the established reputation of Morris Alpern here in the city to such an extent upon that branch of the case that, should the verdict of the jury be contrary to that finding upon that one question, I would promptly set it aside.'

"The only admitted evidence in this case of general reputation was the city directories; so far as the reference to the defendant in such directories went, neither the

plaintiff nor the defendant knew thereof at the time this note was given."

We think counsel are in error in this. The plaintiff, who was an active business man and president of a bank, testified that he knew of the formation of the partnership, of its engaging in business, the manner of conducting it, and that he never heard of any change in the partnership until defendant denied his liability on the note. The cashier of the bank testified to substantially the same thing, only more in detail. We think there was an abundance of evidence for the statement of the judge. We have a case, then, of an admitted partnership, which was known to the plaintiff; of its secret dissolution, so far as the public was concerned; of no notice given to the public or the men who had dealt with the firm of its dissolution; of the indorsing of a note at the request of the managing member of the old firm, and the obtaining of the money at the bank without any notice on the part of the bank, or of the indorser, of the dissolution of the firm. It was not enough for Morris Alpern to withdraw from the firm. He should have given publicity to his withdrawal.

In *Burgan* v. *Lyell*, 2 Mich. 105 (55 Am. Dec. 53), the court said:

"Whether a member who had sold out his shares in the company stock would be relieved from liability without notice, before the work was done, or from the payment of debts created subsequent to such sale, propounded to the court for decision * * *. The answer is, that each member of the partnership will continue liable to third persons for any debts or liabilities incurred in the transaction of their legitimate company business, until a dissolution of the copartnership, and notice thereof. (Story on Partnership, §§ 334–336, together with cases therein noted); and that a dissolution, by one of the partners silently withdrawing, or assigning his interest in the company stock to another, cannot legally have the effect to relieve such partner from liability for work done before, or debts contracted after, thus silently withdrawing or assigning."

See, also, *Johnson* v. *Emerick*, 70 Mich. 215 (38 N.

W. 223); *Hall* v. *Heck,* 92 Mich. 458 (52 N. W. 749); *Solomon* v. *Kirkwood,* 55 Mich. 256 (21 N. W. 336).

As neither of the attorneys wanted the case submitted to the jury, but insisted upon a directed verdict, we think the judge made a right disposition of the case.

Judgment is affirmed.

MONTGOMERY, C. J., and OSTRANDER, HOOKER, and STONE, JJ., concurred.