[Civ. No. 24330.   Second Dist., Div. Three.   Dec. 2, 1960.]

DONALD J. GILLESPIE, Appellant, v. CHEVY CHASE GOLF CLUB (Individual's Fictitious Name) et al., Defendants; CHARLES H. CORBETT et al., Respondents.

Erb, French & Picone and Martin C. Calaway for Appellant.

Belcher, Henzie & Fargo, George M. Henzie, Crider, Tilson & Ruppé, Marshall T. Hunt and Henry E. Kappler for Respondents.

SHINN, P. J.—Plaintiff was injured when a golf cart, in which he was riding on a public golf course, overturned. He brought suit against Ralph Simpson, who was driving the cart, and against Charles H. Corbett, the owner of the course, doing business as Chevy Chase Golf Club, accusing Simpson of negligence in driving the cart and Corbett of negligence in the maintenance of the course. Verdict and judgment were in favor of Simpson and against Corbett. The court, of its own motion, made an order vacating the verdict against Corbett, directing judgment in his favor, and granting him a new trial in case the order should be reversed. Plaintiff appeals from the judgment in favor of Simpson and from the order.

We shall consider first the appeal from the judgment. There was no direct evidence that Simpson was negligent. Plaintiff testified he had no criticism to make of the manner in which Simpson operated the cart. Nevertheless, as against Simpson, he relies upon the doctrine of res ipsa loquitur, which he states in his brief substantially as it was given to the jury in his instruction, namely, "First, that it was the kind of accident that did not ordinarily occur in the absence of someone's negligence; that it was caused by an agency or an instrumentality exclusively within the control of the defendant, and, third, that the accident was not due to any voluntary action or contribution on the part of the plaintiff."

There was sufficient evidence to prove the existence of the first two conditions but there was also evidence that the actions of plaintiff interfered with Simpson's handling of the cart and caused it to overturn.

The point we have for decision may be stated as follows: Plaintiff contends that although there was evidence from which the jury could have found that his own actions were the cause of the overturning of the cart, the res ipsa loquitur doctrine was applicable unless he was guilty of contributory negligence, and the fact that the jury rendered a verdict against Corbett proves that it was determined that he, plaintiff, was not guilty of contributory negligence.

Plaintiff misconceives the meaning of the third element of the doctrine, namely, that before it comes into play it must appear that the accident was not due to any voluntary action or contribution on the part of the plaintiff. Plaintiff's interpretation would necessitate the addition of wording which would incorporate contributory negligence as an element of the res ipsa rule. The two doctrines cannot be commingled in this manner.

When the first two conditions of the rule exist, as they did in the present case, and the defendant maintains that the third condition does not exist, the question arises whether there is sufficient evidence of conduct upon the part of plaintiff to establish that it would be as reasonable to believe that the accident was due to his conduct as to that of the defendant. The res ipsa rule needs no elaboration, and no explanation of the statement of it in the instruction. ■ The rule was correctly stated and it means just what it says. It permits an inference of a defendant's negligence in certain conditions, and no others can be read into it. In the absence of direct evidence of negligence of the defendant it would be wholly unreasonable and unjust to infer negligence upon his part even though the sole cause of the accident was shown by the evidence to have been some nonnegligent conduct of the plaintiff. The res ipsa rule does not permit imposition of liability without fault.

■ There was ample evidence that the actions of plaintiff were the efficient cause of the overturning of the cart. There was a rack on the card for clubs and a seat for two persons. The cart operates on batteries and is steered with a tiller which turns a single front wheel. When the accelerator is depressed, power is applied; when the brake is actuated progress is arrested; it can travel on a level at about 10 miles per hour. Plaintiff was seated next to Simpson. The cart was going down the ninth fairway at moderate speed. There was a slope down of 20 feet in 100 yards. The surface was bumpy and the ride was rough. Plaintiff's bag of clubs, which he held between his knees, became unbalanced and they were about to fall out; plaintiff retrieved them. Simpson testified that as plaintiff was restoring the clubs to their original position the bag came into contact with his arm or the tiller, which caused the cart to make a sharp turn and overturn, pinning plaintiff beneath it. The jury presumably was convinced that the accident occurred as described by Simpson, and that it was due to plaintiff's actions alone. Whether those actions were purely accidental or negligent was beside the question, inasmuch as they furnished an explanation of the accident sufficient to eliminate the res ipsa rule, and to preclude an inference thereunder that Simpson was guilty of negligence. (*Spencer* v. *Beatty Safway Scaffold Co.*, 141 Cal.App.2d 875 [297 P.2d 746].)

The judgment in favor of Simpson must be affirmed.

■ There was no evidence that Corbett was negligent. He

had a duty toward his customers to maintain the course in a reasonably safe condition. There was no evidence that he failed in that duty. Two of his employes regularly patrolled the course to keep it in condition. ▉ It was alleged in the complaint that the cart ran into a ''chuckhole'' which is defined as ''a deep hole in a wagon rut.'' There was testimony that Simpson had been overheard to say that the cart ran into a chuckhole. The statement, if made, was not evidence against Corbett. There was no evidence that there was a hole. No one saw a hole. No one testified that the cart would overturn by running into a hole so small as to go unnoticed. There was no evidence that the course was negligently maintained. There was evidence that the course was somewhat bumpy, but no evidence that it differed from other public courses whose turfs are mutilated by occasional players.

Plaintiff testified that he saw Simpson drinking part of a highball, or perhaps apple cider, with his breakfast at the club, which, incidentally, Simpson denied. It was shown that Simpson had a beer before he started to play, another at the second hole and a third at the fourth hole, where plaintiff had a highball. ▉ Plaintiff argues that the jury could have found Corbett to have been negligent in several particulars: he should not have rented a cart to a player who would drink three beers while playing nine holes; he should have provided paths on which the carts could be driven; he should have given Simpson special instructions how to drive the cart and special instructions should have been posted in the carts regarding their operation. These arguments are scarcely deserving of our attention. Simpson was an experienced golfer who had used Corbett's carts on previous occasions; three beers did not affect his ability to drive the cart safely; carts are intended for use on the fairways, not on paths. The golf cart was a tricycle-like affair, sturdy and stable with only an accelerator and a brake and it would appear that any reasonably intelligent person could learn how to operate it in a few minutes.

The verdict against Corbett was without support in the evidence. It was a verdict that called for the exercise of the power of the court to vacate it and enter a contrary judgment. It was the duty of the court to decline to enter a judgment in accordance with the verdict against Corbett when it would have been unsupportable in law.

The judgment and the order appealed from are affirmed.

Vallée, J., and Ford, J., concurred.