PAIS *v.* CITY OF PONTIAC.

1. TRIAL—MOTIONS FOR DIRECTED VERDICT BY BOTH PARTIES.

   The trial court properly dismissed the jury and determined both
   the issues of fact and law, where both parties had asked for
   a directed verdict, hence, plaintiff may not thereafter com-
   plain that there was an issue of fact for the jury under practice
   then in effect.

2. APPEAL AND ERROR—MOTIONS FOR DIRECTED VERDICT BY BOTH PAR-
   TIES—QUESTIONS REVIEWABLE.

   The matter for determination by the Supreme Court on appeal
   from order granting defendant's motion for directed verdict
   is whether or not there was evidence from which the trial
   judge could find for the defendant, where at close of plaintiff's
   case both parties had moved for a directed verdict.

3. NEGLIGENCE—FLOOR COVERING OF GOLF CLUBHOUSE—EVIDENCE—
   VIEW OF PREMISES.

   Order granting defendant city's motion for directed verdict in
   action for injuries plaintiff received when he slipped on
   asphalt tile flooring of cart room of clubhouse as he proceeded
   thereon from lobby with rubber type floor covering, *held,* not
   contrary to the clear weight of the evidence as to defendant's
   negligence, where both parties had moved for a directed verdict
   and trial court not only observed and heard the witnesses but
   also inspected the floors of the lobby and cart room.

Appeal from Oakland; Holland (H. Russel), J.
Submitted December 5, 1963. (Calendar No. 120,
Docket No. 49,964.) Decided April 6, 1964.

Case by Morris Pais against the City of Pontiac,
a municipal corporation, for personal injuries sus-

REFERENCES FOR POINTS IN HEADNOTES

[1] 53 Am Jur, Trial § 332 *et seq.*
[2] 5 Am Jur 2d, Appeal and Error § 886.
[3] 38 Am Jur, Negligence § 344 *et seq.*

tained when he fell in municipal golf course club-
house.  Judgment for defendant.  Plaintiff appeals.
Affirmed.

*Houston & McLay* (*Wallace D. McLay,* of counsel),,
for plaintiff.

*William A. Ewart,* for defendant.

KELLY, J.  Defendant operates a golf course for
the public, at less than cost, as a recreational facility
for its citizens and other members of the public
who choose to use it.

Plaintiff sought damages for injuries received
when he slipped and fell on the floor of the club-
house.

At the conclusion of plaintiff's proofs, both plain-
tiff and defendant moved for a directed verdict.

The court discharged the jury and concluded the
proofs to the end that the factual record might be
complete and then granted defendant's motion for a
directed verdict.

Appellant claims the court erred in directing a
verdict contrary to the great weight of the evidence
and in failing to recognize that the degree of care
required of the owner of a building is dependent
upon the degree of risk involved.

The cart room adjoins the lobby of the clubhouse
and could be entered through an open doorway.
There were no signs indicating any danger or pro-
hibiting entrance from the lobby into the cart room.
There was asphalt tile flooring in the cart room,
which had been there since the building was con-
structed in 1936.  The lobby of the clubhouse had
a rubber type floor covering.

Plaintiff testified that he was 64 years of age and
that in the morning of May 15, 1960, he and his son-
in-law went to the Pontiac golf course; that they

entered the clubhouse and that his son-in-law went out to check in with the starter; that he sat at a table in the clubhouse and was drinking coffee when he was informed "we are ready to tee off"; that he got up from the table and went over to pay for the golf cart "and I paid and I walked to the cart room. Just as I walked in I slipped, fell."

Plaintiff stresses testimony of defendant's employees to the effect that the floor of the lobby was safer for a person in golf shoes with cleats to walk on than the floor in the cart room because it was a soft, spongy material that would allow the golfer to use a more normal stride because the cleats made a depression that "springs back up again" in a certain percentage of time and, also, the testimony of plaintiff's expert witness, Edward W. Tillitson (associate professor of chemical engineering at Wayne University) that golf-cleated shoes on asphalt floors are about 2-1/2 times more slippery than shoes with leather soles and, considering the coefficient of friction, the cart room would be 5 times more slippery than the lobby.

Plaintiff in his brief admits that the asphalt floor in the cart room was clean and free of any defects and, also, while this type of floor is extensively used in kitchens, bathrooms, recreation rooms and stores, yet defendant was "negligent in maintaining an asphalt floor  *  *  *  where persons wearing golf shoes with metal cleats will use them," and where there was no notice of warning that the floor in the cart room was different than the floor in the lobby.

Defendant introduced proof that employees handed the carts from the cart room to the golfers and made an effort to keep people out of the cart room, but admitted that when attendants were busy patrons in a hurry helped themselves. Plaintiff testified that on his previous trips to the club he had never, before the day of the accident, entered the cart room as

those he golfed with secured the cart, and plaintiff's son-in-law testified "there was never any assistance offered," that he would walk into the cart room and get his cart.

Defendant emphasizes the fact that the testimony of both plaintiff and defendant's witnesses establishes that a person walking on a hard surfaced floor, such as asphalt tile, concrete, or wood flooring, should use extraordinary care to protect himself from a fall and that plaintiff, hurrying into the cart room, did not exercise that care.

Plaintiff states:

"Where the clubhouse floor is so slippery to golf cleats that golf patrons of the course, without being given any notice or warning are apt to slip and fall, the defendant is liable for any injuries resulting therefrom," and "the evidence is clear that defendant had both actual and constructive notice for many years."

Evidence was introduced to the effect that between 30,000 and 50,000 rounds of golf were played in a season and that the cart room floor remained the same from the time it was installed in 1936 up to the day of plaintiff's accident. The record is silent that the said conditions caused injury to any other person than plaintiff, or that defendant was informed or warned that the asphalt floor created a dangerous condition.

We do not have the usual appeal before us that involves the granting of defendant's motion for a directed verdict or a motion *non obstante veredicto.*

In *Long* v. *Dudewicz,* 355 Mich 469, this Court commented on an appeal similar to this, namely, from a decision for defendant after both parties had asked for a directed verdict, stating (pp 472, 473):

"Both parties having asked for a directed verdict, counsel cannot now complain that there was an issue

of fact for the jury. The court properly dismissed the jury and considered both the issues of fact and law. Plaintiff, the loser in this case, cannot renege.
\* \* \*

"We find the lower court in this instance, in view of the motions of both counsel, acting at the conclusion of proofs in the same capacity he would have acted had the case been tried before him without a jury.

"In our review on this appeal we find ourselves in the position of determining whether or not there was evidence from which the trial judge could find for the defendant."

The court in its ruling on the motion for directed verdict stated: "The proof here submitted merely demonstrates that plaintiff suffered the misfortune of an accident. The plaintiff has fallen far short of the burden which he must bear in proving some actionable element of the negligence charged."

The lower court had the advantage of not only observing and hearing the witnesses testify but, also, of inspecting the floors of the lobby and the cart room.

There was evidence from which the trial judge could find for the defendant. The granting of defendant's motion for directed verdict was not contrary to the clear weight of the evidence.

Affirmed. Costs to appellee.

Dethmers, Smith, and O'Hara, JJ., concurred with Kelly, J.

Black, J. (*concurring in affirmance*). When both parties moved unconditionally (under the practice then in effect\*) for a directed verdict in favor of each respectively, followed by discharge of the jury,

---

\* See GCR 1963, 515.1, for change of the practice considered in this opinion.

the status of the case changed abruptly from that of a jury trial to that of a nonjury trial. Judge Holland thereupon became the weigher and finder of facts as well as the applier of applicable law. Hence, there being in any view of the case evidence sufficient to support Judge Holland's finding that defendant was not actionably negligent, his judgment was and is free from error as assigned.

The rule to which I refer arose with definite clarity when *Culligan* v. *Alpern,* 160 Mich 241, and *Germain* v. *Loud,* 189 Mich 38, were handed down. The rule, quoted from the *Germain Case* at 44:

"While, perhaps, different minds might be differently affected by the testimony which is substantially undisputed—different minds might draw different inferences—counsel for both parties requested the court to decide the controlling question, and it was not error for the court to do so. *Culligan* v. *Alpern,* 160 Mich 241. Whether we say it was decided as a question of law or one of fact is not very material."

I concur in affirmance.

KAVANAGH, C. J., and SOURIS, J., concurred with BLACK, J.

ADAMS, J., took no part in the decision of this case.