[Civ. No. 24710. First Dist., Div. Three. May 16, 1969.]

ARVILLA C. BEAUCHAMP, Plaintiff and Appellant, v. LOS GATOS GOLF COURSE et al., Defendants and Respondents.

Matthew M. Fishgold for Plaintiff and Appellant.

Popelka, Graham, Van Loucks & Allard and Bernard J. Allard for Defendants and Respondents.

DAVID, J. pro tem.*—Appeal from judgment of nonsuit. Judgment reversed.

Accompanying her husband and C. D. Wellwood, on June 6, 1965, Arvilla C. Beauchamp, a business invitee at the Los Gatos Golf Course, was proceeding from the parking lot to the starting area, over the almost new level cement veranda. This was 8 feet wide and 90 feet long, with a rough troweled surface colored patio green. She was wearing golf shoes with half-worn spikes. She had taken three or four steps, having left her golf cart behind her, when her feet slipped from under her, despite the rough troweled surface of the concrete, and she fell down hard on her buttocks, with resulting injuries to back, legs and an arm. This was not the only approach she had used to enter. One could get out of a car, and go directly to the golf cart area, near the start without using the concrete walk. There was a passageway between the bumperlogs to which parking cars nosed in, and parallel to the concrete walk for its entire length, paved as the parking lot was paved with oiled rock.

It was a common practice for golfers to put their golf shoes on in the parking area, and to walk over this pathway and also the concrete walk. Appellant's husband and witness, Ralph Beauchamp, in his regular use of the club, only traveled this concrete walk once before; usually taking the path straight in. On the day in question when he, Mrs. Beauchamp and Charles D. Wellwood were the entering threesome, he stated "Why we went this way I don't know."

A portion of the concrete walkway 10 to 15 feet beyond the point of her fall was covered by a rubber mat. Mrs. Beauchamp had entered over this on a prior occasion. This rubber mat had been moved out of the clubhouse onto the walkway when a new carpet was installed in the clubhouse.

The rubber mat was not placed on the concrete primarily as

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

a safety measure, though it could act as a safety feature. The veranda was more slippery when there was no mat, said Earl Scannell, who operated the golf course. He testified over objection that he had never been notified of any accidents concerning this particular area in question, other than Mrs. Beauchamp's, and without further objection testified that between 3,500 and 4,000 people a month traversed the area. As an expert, he testified that Mrs. Beauchamp's spikes or cleats were half-worn, almost down to the nub, and should be replaced, as worn spikes do not obtain traction.

Mr. Wellwood, Mrs. Beauchamp's witness, testified that every golfer knows that one wearing golf spikes must walk with more care and caution on cement than on normal fairways or greens.

There were no imperfections or defects in the concrete walk surface. There was no debris, water, grease, wax or foreign substance upon which Mrs. Beauchamp slipped; nor were there any on the soles of her cleated or spiked shoes. These were received in evidence at the jury trial.

Mrs. Beauchamp testified that the cement where she fell was slippery, and looked smooth to her. She testified that she knew her footing on cement, wearing golf spikes, wouldn't be as stable as it would have been walking on grass. She had played at this golf course regularly since 1958, but this was the first time she used that area of the recently completed cement veranda. She had played golf for eight or nine years. No one had told her the veranda or patio cement walkway was slippery, though her husband had slipped on it the day before, but did not inform anyone. Witness Wellwood stated such slips were not unusual, and were not normally given attention.

Before the accident, Mrs. Beauchamp was physically active. In addition to golf, she bowled and went square dancing.

At the conclusion of plaintiff's case, motion for nonsuit was granted, and this appeal followed. The rules prescribing the legal gauntlet to be run by such a motion need not be dittoed here, other than to refer to *Elmore* v. *American Motors Corp.*, 70 Cal.2d 578, 583 [75 Cal.Rptr. 652, 451 P.2d 84], and *Lucas* v. *Hesperia Golf & County Club*, 255 Cal.App.2d 241, 244 [63 Cal.Rptr. 189].

At the time of trial, it was stipulated that Mrs. Beauchamp was an invitee. If disputed, her status would then have been a jury question. (*Clawson* v. *Stockton Golf etc. Club*, 220 Cal. App.2d 886, 897 [34 Cal.Rptr. 184].)

The duty of the possessor of golf club premises is

"sufficiently extensive to protect the business visitor in his use of such means of ingress and egress as by allurement or inducement, express or implied, he has been led to employ." (*Johnston* v. *De La Guerra Properties, Inc.,* 28 Cal.2d 394, 399 [170 P.2d 5] ; Rest., Torts, § 343, com. (b).)

This case was tried a year before the Supreme Court decided the case of *Rowland* v. *Christian,* 69 Cal.2d 108, in which (at p. 118 [70 Cal.Rptr. 97, 443 P.2d 561]) the court adopts as the superseding rule, "The proper test to be applied to the liability of the possessor of land in accordance with section 1714 of the Civil Code is whether in the management of his property he has acted as a reasonable man in view of the probability of injury to others, and, although the plaintiff's status as a trespasser, licensee, or invitee may in the light of the facts giving rise to such status have some bearing on the question of liability, the status is not determinative."

The *ratio decidendi* of the case is that social policy demands that the legal definition of the duty of care due a licensee, theretofore prevailing, be abrogated. If, as the quotation indicates, status of one as an invitee still has some relevancy on the question of liability of the possessor of land under the announced policy, we have to determine what that may be, both procedurally and substantively.

The term "invitee" has not been abandoned, nor have "trespasser" and "licensee." In the minds of the jury, whether a possessor of the premises has acted as a reasonable man toward a plaintiff, in view of the probability of injury to him, will tend to involve the circumstances under which he came upon defendant's land; and the probability of exposure of plaintiff and others of his class to the risk of injury; as well as whether the condition itself presented an unreasonable risk of harm, in view of the foreseeable use of the property. In turn, that reinvolves the degree to which those on the property could be expected to be there, and the use they could be expected to make of the premises. In this, there is a wide difference between a trespasser, who actually may be forbidden the use of the property, and an invitee, invited or urged to be there. "The knocker says, 'Come and knock me;' the bell says, 'Come and ring me;' and a person going on the step to do so is injured. Would not the owner be liable?" (Byles, J. in *Smith* v. *London & Saint Katherine Docks Co.,* L.R.C.P., 326, 331.)

The leading American case and bellwether of all that followed on the liability of the invitee is *Sweeny* v. *Old Colony*

*etc. R.R. Co.*, 87 Am.Dec. 644. The distinctions between the three categories of users therein by Bigelow, C. J. (*id.* at pp. 647-650) are classic.

Short of an absolute liability, which may arise independently of negligence or want of it (*Green* v. *General Petroleum Corp.*, 205 Cal. 328 [270 P. 952, 60 A.L.R. 475]), the legal duties declared to exist in favor of the invitee upon the premises have been the highest judicially imposed upon the possessor of land. We do not believe they have been jettisoned by *Rowland* v. *Christian, supra.* Likewise, we do not believe that such established decisional principles have been abandoned and free-wheeling by the triers of fact substituted in their stead. If guidelines are withdrawn from juries relative to the invitor and invitee, proof of fault might tend to consist of the fact of plaintiff's injury and defendant's ability to pay, assumed to exist since a reasonably prudent man would be silly not to have insurance. If withdrawal of such guidelines expanded the discretion of juries on the one hand, it would limit *pro tanto* the power of the court to control abuses on the other, for want of yardsticks applicable to appropriate categories of situations. The citizen would be at a loss to learn factually just what the law demands of him as a landowner. The diversity of jury decisions on like facts, plaintiff by plaintiff, and defendant by defendant, might well work inequality before the law.

After study and reflection, we are persuaded that the legal duties heretofore announced in relation to the invitor-invitee relationship are generally consonant with Civil Code section 1714. One is reminded of course, that Civil Code section 1708 is in *pari materia.* "Every person is bound, without contract, to abstain from injuring the person or property of another, or infringing upon any of his rights." (§ 1708.)

Civil Code section 1714 states: "Every one is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself . . ."

Under Civil Code sections 1708 and 1714 the jury has the burden of deciding not only what the facts are, but what any unformulated standard is of reasonable conduct of the ordinary prudent or reasonable person under like circumstances. "But the proper conduct of a reasonable person under particular situations may become settled by judicial decision or

be prescribed by statute or ordinance.'' (*Satterlee* v. *Orange Glenn School Dist.*, 29 Cal.2d 581. 587 [177 P.2d 279].)

We therefore conclude that *Rowland* v. *Christian, supra,* does not generally abrogate the decisions declaring the substantive duties of the possessor of land to invitees nor those establishing the correlative rights and duties of invitees.

By California law, an invitee is one who by express or implied invitation is brought or comes on to the premises for the land possessor's advantage, or their mutual benefit or common interest. (*Edwards* v. *Hollywood Canteen,* 27 Cal.2d 802, 809 [167 P.2d 729]; *Miller* v. *Desilu Productions, Inc.,* 204 Cal.App.2d 160, 163 [22 Cal.Rptr. 36]; *Grant* v. *Sunset Tel. etc. Co.,* 7 Cal.App. 267 [94 P. 368].)

In the exercise of ordinary care, the possessor of land owes a duty to an invitee to make the property reasonably safe for the intended use by the intended user, and to warn of latent or concealed dangers (*Shanley* v. *American Olive Co.,* 185 Cal. 552, 555 [197 P. 793]; *Johnstone* v. *Panama Pac. Intl. Exposition Co.,* 187 Cal. 323, 330 [202 P. 34]) and to guard against possible dangers by reasonable inspection of the premises (*Cordler* v. *Keffel,* 161 Cal. 475 [119 P. 658]; *Florez* v. *Groom Dev. Co.,* 53 Cal.2d 347 [1 Cal.Rptr. 840, 348 P.2d 200]).

There is no duty to warn of an obvious danger but the possessor of land does have a duty to warn an inviteee not only of conditions known by him to be dangerous but also of conditions which might have been found dangerous by the exercise of ordinary care. (*Chance* v. *Lawry's Inc.,* 58 Cal.2d 368, 380 [24 Cal.Rptr. 209, 374 P.2d 185]. citing *Blumberg* v. *M & T Inc.,* 34 Cal.2d 226 229 [209 P.2d 1].) The invitor may assume that an invitee will perceive that which would be obvious to him through the ordinary use of his senses. (*Neuber* v. *Royal Realty Co.,* 86 Cal.App.2d 596, 612-613 [195 P.2d 501].)

When required, whether a warning is effective to give protection is a jury question. (*Taylor* v. *Centennial Bowl, Inc.,* 65 Cal.2d 114 [52 Cal.Rptr. 561, 416 P.2d 793].)

'' 'The applicable general principle is that the owner of the property, insofar as an invitee is concerned, is not an insurer of safety but must use reasonable care to keep his premises in a reasonably safe condition and give warning of latent or concealed peril. He is not liable for injury to an invitee resulting from a danger which was obvious or should have been observed in the exercise of reasonable care.' ''

(*Florez* v. *Groom Dev. Co., supra,* 53 Cal.2d 347, 355; accord, *Pauly* v. *King,* 44 Cal.2d 649, 653 [284 P.2d 487]; *Brown* v. *San Francisco Ball Club, Inc.,* 99 Cal.App.2d 484, 486 [222 P.2d 19]; *Dingman* v. *A. F. Mattock Co.,* 15 Cal.2d 622, 624 [104 P.2d 26], citing *Mautino* v. *Sutter Hospital Assn.,* 211 Cal. 556 [296 P. 76]; *Blodgett* v. *B. H. Dyas Co.,* 4 Cal.2d 511 [50 P.2d 801], quoting the rule as stated in *Shanley* v. *American Olive Co., supra,* 185 Cal. 552; *Weddle* v. *Heath,* 211 Cal. 445, 452 [295 P. 832]; *Goldstein* v. *Healy,* 187 Cal. 206, 211 [201 P. 462]; *Delk* v. *Mobilhomes, Inc.,* 118 Cal.App.2d 529, 533 [258 P.2d 75]; *Vitrano* v. *Westgate Sea Products Co.,* 34 Cal.App.2d 462, 466 [93 P.2d 832]; *Neuber* v. *Royal Realty Co., supra,* 86 Cal.App.2d 596, 613; *Walker* v. *Greenberger,* 63 Cal.App.2d 457, 462 [147 P.2d 105]; *Ambrose* v. *Allen,* 113 Cal.App. 107, 113 [289 P. 169].)

█ The invitation to use the premises is to use them in the condition in which they are openly and plainly visible. (*Ambrose* v. *Allen, supra,* 113 Cal.App. 107, 113, citing *Cole* v. *L. D. Willicutt & Sons Co.,* 218 Mass. 71 [105 N.E. 461, 462].)

█ "There are other well settled principles which are pertinent to the question of defendant's duty toward the public. One is that a possessor of land has no duty toward persons who come upon the land to change the method of his operations which are carried on so openly as to be obvious to all observers." (*Allen* v. *Jim Ruby Constr. Co.,* 138 Cal.App. 2d 428, 434 [291 P.2d 991], citing Prosser, Law of Torts, p. 631; [2d ed., p. 449, § 77].)

█ Where a person knows, or as a cautious traveler should know, that it is unsafe to pass over a slippery sidewalk and does so though there is an equally convenient and safe passageway provided for him. he will be barred by such contributory negligence from recovery; even though the sidewalk was negligently maintained. (*Mora* v. *Favilla,* 186 Cal. 199, 205 [199 P. 17].) There is no duty to warn him of that which he already knows. (*Knight* v. *Contracting Engineers Co.,* 194 Cal.App.2d 435, 447 [15 Cal.Rptr. 194].)

There are a multitude of California cases applying the rules. Almost without exception, they deal with walks and floors in which there is some physical defect; or upon which there exists some obstruction; or whose surface is made perilous by some liquid or substance, entering into a slip or fall; or where their ordinary use brings the invitee into the presence of, or subject to other perils. The peril here, rather,

consisted of the appellant's golf shoes, with half-worn spikes, which did not provide traction on a physically perfect concrete walkway.

In comparable situations, nonsuits, directed verdicts, or judgments notwithstanding the verdict have been sustained, on the ground of the absence of duty to the knowledgeable invitee.

In *Pais* v. *City of Pontiac,* 372 Mich. 582 [127 N.W.2d 386], a directed verdict for defendant was affirmed. Plaintiff, a 64-year-old man, slipped and fell on an asphalt floor in a portion of defendant's golf clubhouse where people, like plaintiff, wearing golf shoes with cleats could be expected to go. The lobby of the clubhouse had rubber-type flooring, and plaintiff contended he had no warning of the asphalt floor being any different. Further examples, without cataloging the numerous cases are: *Robson* v. *Union Pac. R.R. Co.,* 70 Cal.App.2d 759 [161 P.2d 821] [directed verdict, minor defect present]; *Graves* v. *Roman,* 113 Cal.App.2d 584, 586 [248 P.2d 508] [nonsuit, tripping over brass edging of linoleum on floor]; *Holcombe* v. *Burns,* 183 Cal.App.2d 811 [7 Cal.Rptr. 366] [judgment n.o.v., trip over lawnmower leaning against wall]; *Funari* v. *Gravem Inglis Baking Co.,* 40 Cal.App.2d 25 [104 P.2d 44] [judgment n.o.v., plaintiff fell on elevator floor known by him to be slippery, and on which he had slipped before]; *Girvetz* v. *Boys' Market, Inc.,* 91 Cal.App.2d 827 [206 P.2d 6] [judgment n.o.v., fall on banana peel on store floor for one and one-half minutes, no showing of proprietor's knowledge]; *Gillespie* v. *Chevy Chase Golf Club,* 187 Cal. App.2d 52 [9 Cal.Rptr. 437] [judgment n.o.v., driving of golf cart and overturning by chuck-hole]. A slip on concrete steps, roughened, and wet with rain, by one who had been a regular attendant at the ballpark, was held not actionable in *Lappin* v. *St. Louis Nat. League Baseball Club* (Mo.App.) 33 S.W.2d 1025. Consult further: *Ducharme* v. *National Bank of Lebanon,* 91 N.H. 528 [15 A.2d 884] [plaintiff testified stairs looked "real white" and "awful slippery"]; *Novek* v. *Horn & Hardart Baking Co.,* 364 Pa. 349 [72 A.2d 115] [steps worn and smooth]; *Cleveland Athletic Assn. Co.* v. *Bending,* 129 Ohio St. 152 [194 N.E. 6] [marble entranceway, judgment for plaintiff reversed]; *Knopp* v. *Kemp & Hebert,* 193 Wash. 160 [74 P.2d 924] [smooth terrazo, held no evidence of negligence].

Plaintiff contended that it was breach of duty not to have provided the half-inch rubber mats over the full length of the

veranda. The question, however, is whether there was any actionable danger or defect in what was provided, in view of plaintiff's own allegedly knowledgeable use of it with her spiked golf shoes.

In the case of *Pais* v. *City of Pontiac, supra,* 127 N.W.2d 386, we noted a similar unavailing contention.

The same contention, based on the absence of mat or carpet on a marble stairway, though mats and runners were used elsewhere, was held not applicable as a matter of law in *Freedman* v. *Clinton Court Corp.,* 279 N.Y. 736 [18 N.E.2d 685].

A floor mat catching a spike could itself be held dangerous. (*Blumberg* v. *M & T Inc., supra,* 34 Cal.2d 226, 229 [spiked heel in mat interstice]; discussed in *Sokolow* v. *City of Hope,* 41 Cal.2d 668, 672 [262 P.2d 841].)

Rubber matting is not necessarily the answer. When spiked shoes are used, the chances of tripping are present. (Cf. *Savannah Theatres Co.* v. *Brown,* 36 Ga.App. 352 [136 S.E. 478]; *Butcher* v. *Hyde,* 152 N.Y. 142 [46 N.E. 305]; *Weidman* v. *Consolidated Gas, Elec. Light & Power Co.,* 158 Md. 39 [148 A. 270].)

A carpet penetrated by spikes is apt to throw the wearer, or slip with him, with resulting liability. (*Sharpless* v. *Pantages,* 178 Cal. 122 [172 P. 384] [loose carpeting]; cf. *Jackson* v. *Saenger-Ehrlick Enterprises* (La.App.) 175 So. 688 [high heels through carpet]; *Heckel* v. *Standard Gateway Theater,* 229 Wis. 80 [281 N.W. 640] [terrazo stairway covered with carpet in which heel caught]; and generally note re liabilities due to defect in floor or floor covering, 64 A.L.R.2d 335.)

This is not a case like *Chance* v. *Lawry's, Inc., supra,* 58 Cal.2d 368, 375, where an invitee in a restaurant fell over a planter box which she did not know about and did not see, even though she could have seen it, had she looked. It is not a "waxed floor" case, of the types considered in *Baker* v. *Manning's, Inc.,* 122 Cal.App.2d 390 [265 P.2d 96], and *Nicola* v. *Pacific Gas & Elec. Co.,* 50 Cal.App.2d 612, 615 [123 P.2d 529]. Nor is there any claim that there was an abstraction of attention. (Cf. *Gibson* v. *County of Mendocino,* 16 Cal.2d 80, 86 [105 P.2d 105] [fire siren].)

Res ipsa loquitur is not applicable. (*Gillespie* v. *Chevy Chase Golf Club, supra,* 187 Cal.App.2d 52, 54-55.)

In the absence of any physical defect in the cement walk itself, the absence of any foreign substance on it, the absence of any prior complaints of slips and falls upon it, the unim-

paired visibility of its surface, the plaintiff's own imputed knowledge or notice as an experienced golfer of the risk of walking on cement with golf shoes with metal spikes, the trial court had reason to conclude a nonsuit was justified under the authorities before it. (Cf. *Harpke* v. *Lankershim Estates,* 103 Cal.App.2d 143 [229 P.2d 103]; *Vaughn* v. *Montgomery Ward & Co.,* 95 Cal.App.2d 553 [213 P.2d 417].)

Does *Rowland* v. *Christian, supra,* compel a contrary conclusion? It was not disputed that there was an implied invitation to golfers to use the cement veranda, wearing their golf shoes. Mr. Earl Scannell, manager of the golf club, knew that it was so used. The surface was troweled so as not to be smooth.

A factual issue is whether the club foresaw or reasonably should have foreseen that as constructed and maintained, there was an unreasonable risk of harm to golfers using the veranda so constructed with due care, wearing golf shoes with metal spikes. Whether or not a different facility should or could reasonably have been provided, should warning of the danger of slipping have been given to users wearing golf shoes with spikes?

Both the question of risk of harm, and the necessity of notice involve the obviousness of the risk, either from the physical condition or the manner in which the premises were invited to be used.

The duty to invitees, as stated in *Shanley* v. *American Olive Co., supra,* 185 Cal. 552 and repeated frequently, as in *Florez* v. *Groom Dev. Co., supra,* 53 Cal.2d 347, 355, is that the possessor of land is not liable for injury to an invitee from a danger which is obvious, or should have been observed in the exercise of reasonable care.

Considering the plaintiff's evidence in the instant case, the trial court in granting the nonsuit undoubtedly concluded that the danger involved in walking on the concrete with golf spikes was obvious, and should have been apparent to Mrs. Beauchamp as an experienced golfer, in the exercise of reasonable care. (Cf. Civ. Code, §§ 18 and 19.) Reviewing the evidence, we find the interplay of three separate doctrines:

(1) Where the condition or danger is obvious, there is *no duty* to specially guard or warn against it. Hence, an injury to the user of the premises from an obvious characteristic produces no liability against the possessor of land. Sometimes this has been defined in terms of the invitation, which is to use the premises subject to the obvious risks posed either by

the physical condition or in the contemplated manner of use of the premises in that physical condition. (*Ambrose* v. *Allen, supra,* 113 Cal.App. 107, 113.)

Under the language of Civil Code section 1714, one's use of the property where such a condition or risk attending the manner of use is obvious would perhaps be characterized as a case where one "willfully . . . brought the injury upon himself."

Having built the cement veranda, the golf club was charged with notice of the physical characteristics. This is not equivalent of knowledge of any special risk or danger which could only come about by use with a particular item of footwear; unless that risk was foreseeable in the exercise of ordinary care.

"It is an elementary principle that an indispensible factor to liability founded upon negligence is the existence of a duty of care owed by the alleged wrongdoer to the person injured. or to a class of which he is a member." (*Routh* v. *Quinn,* 20 Cal.2d 488, 491 [127 P.2d 1. 149 A.L.R. 215] ; *Palmer* v. *Crafts,* 16 Cal.App.2d 370, 374, 375 [60 P.2d 533].) And "the question whether the facts disclose a duty owed to the plaintiff by the defendant is in the first instance a question of law for the court." (*O'Keefe* v. *South End Rowing Club,* 64 Cal.2d 729, 749 [51 Cal.Rptr. 534, 414 P.2d 830, 16 A.L.R.3d 1] ; *Hill* v. *Eaton & Smith,* 65 Cal.App.2d 11, 14 [149 P.2d 762] ; *Carroll* v. *Central Counties Gas Co.,* 74 Cal.App. 303, 308 [240 P. 53], quoting from *Pacheco* v. *Judson Mfg. Co..* 113 Cal. 541, 545 [45 P. 833] ; *Palmer* v. *Crafts, supra,* 16 Cal.App.2d 370, 374, 375.)

(2) But the principle likewise can be characterized as *assumption of risk.* The responsibility of the possessor of the premises, whether he is negligent or not, is defeated if there was an assumption of risk by one using the property, where the facts are such the plaintiff must have had knowledge of the risk (*Prescott* v. *Ralph's Grocery Co.,* 42 Cal.2d 158 [265 P.2d 904]) and appreciation of the magnitude thereof. (*Shahinian* v. *McCormick,* 59 Cal.2d 554 [30 Cal.Rptr. 521, 381 P.2d 377].) Knowledge of the hazard may be inferred from the circumstances. (*Ziegler* v. *Santa Cruz etc. School Dist.,* 193 Cal.App.2d 200 [13 Cal.Rptr. 912] ; cf. *Crain* v. *Sestak,* 262 Cal.App.2d 478, 487-488 [68 Cal.Rptr. 849].) The invitee assumes all normal or obvious risks. (65 CJ.S. 757, § 63(53).)

Under the terms of Civil Code section 1714, this doctrine relates to the "willful" conduct of the plaintiff bringing

about his injury. To determine a case upon the "assumption of risk" does not determine that the possessor of land was or was not negligent. The doctrine is based on consent. It arises regardless of the degree of care used by the invitor.

(3) The exception of Civil Code section 1714 usually is construed to relate to contributory negligence, where one "by want of ordinary care, brought the injury upon himself." Unlike (1) and (2) above, this would presuppose negligence on the part of the possessor of premises as applied to this case.

"And it is also obvious that before the invitee may recover for the landowner's breach of duty he must prove himself to be free from negligence in failing to discover the danger and show that he did not know of it and assume the attendant risks." (*Popejoy* v. *Hannon*, 37 Cal.2d 159, 170 [231 P.2d 484].)

This rule obviously relates to (1) and (2), *supra*, for as to (3), the rule is otherwise. (Cf. *Peters* v. *City & County of San Francisco*, 41 Cal.2d 419 [260 P.2d 55]; *Elm* v. *McKee*, 139 Cal.App.2d 353, 361 [293 P.2d 827] [struck head on barber pole].)

*Contributory negligence* is not to be confused with *assumption of risk*. (*Prescott* v. *Ralph's Grocery Co.*, *supra*, 42 Cal.2d 158; *Rostant* v. *Borden*, 192 Cal.App.2d 594, 598 [13 Cal.Rptr. 553].)

It has been held that Civil Code section 1714 does not limit the defense of contributory negligence. (*Buckley* v. *Chadwick*, 45 Cal.2d 183. 192 [288 P.2d 12. 289 P.2d 242].) Failure of the user to exercise ordinary care to discover the danger is not an assumption of risk, but is contributory negligence. (*Vierra* v. *Fifth Ave. Rental Service*, 60 Cal.2d 266. 271 [32 Cal.Rptr. 193. 383 P.2d 777].)

Under *Rowland* v. *Christian*, *supra*, we are impelled to conclude that the obvious nature of the risk, danger or defect under (1) *supra*, can no longer be said *per se* to abridge the invitation given by the possessor of land, or to derogate his duty of care, so as to make his liability solely a matter of law to be determined on a nonsuit. By that decision, this matter of law for the court is transmuted to a question of fact for the jury; namely, whether a possessor of land even in respect to the obvious risk has acted reasonably in respect to the probability of injury to an invitee; and whether or not the invitee used the property reasonably in full knowledge of any obvious risk entering into a subsequent injurious incident. (*Laird* v.

*T. W. Mather, Inc.,* 51 Cal.2d 210 [331 P.2d 617] ; *Kopfinger* v. *Grand Central Public Market,* 60 Cal.2d 852 [37 Cal.Rptr. 65, 389 P.2d 529].)

Reviewing the evidence, we cannot say that with appellant's previous unfamiliarity with the veranda, and the absence of prior experience in walking with spikes upon it, there was an unequivocal acceptance of the risk; or that the danger of doing so was so well-known and apparent to her, that the "visible defect rule" was applicable. The jury may charge her with contributory negligence (*Grey* v. *Fibreboard Paper Products Co.,* 65 Cal.2d 240, 245-246 [53 Cal.Rptr. 545, 418 P.2d 153]) but the question of her appreciation of the risk, or her imputed knowledge of it, is not so overwhelming as to properly permit a nonsuit. Initially, in view of the invitation to use the walkway, she was entitled to consider it reasonably safe. (Cf. *Peters* v. *City & County of San Francisco, supra,* 41 Cal.2d 419, 424-425 and *Cameron* v. *City of Gilroy,* 104 Cal.App.2d 76, 80 [230 P.2d 838].) This, of course, is to be modified by what she knew or ought reasonably to have known, about the risk.

As was said in *Grey* v. *Fibreboard Paper Products Co., supra,* 65 Cal.2d 240, 246: "The testimony presented would support, but not compel, a finding that the plaintiff unreasonably proceeded in a situation of known danger." To one wearing golf shoes with worn down spikes on a concrete surface, it would be proper to instruct the jury upon the assumption of risk.

But under *Rowland* v. *Christian, supra,* we do not believe the state of the evidence authorized the trial court to conclude the risk was so obvious as to nonsuit her on the basis of the "known danger" rule as applied to the duty of the possessor of the premises. (Cf. *Schwartz* v. *Helms Bakery Limited,* 67 Cal.2d 232, 239-240 [60 Cal.Rptr. 510, 430 P.2d 68].)

To sustain the nonsuit we would have to find that plaintiff's testimony cannot permit any conclusion or inference, other than that she knew the danger, appreciated the magnitude of the risk, and knowingly made this choice of ways. This we cannot do. (*Raber* v. *Tumin,* 36 Cal.2d 654, 656 [226 P.2d 574].)

Since assumption of risk bars an action whether or not the possessor of the premises was negligent, reversal of the judgment of nonsuit reopens the question of the respondents' duty of care, in view of their knowledge of the invited uses of the veranda. The fact a mat was used as a safety measure may be

considered in relation to respondents' own conception of duty of care. (*Sapp* v. *W. T. Grant Co.*, 172 Cal.App.2d 89, 93 [341 P.2d 826].)

Respondents are entitled to urge appellant's negligence in a choice of ways. (*Kaukonen* v. *Aro*, 142 Cal.App.2d 502, 506 [298 P.2d 611].)

The jury may balance the practical necessity, if any, of the use of the cement walkway against plaintiff's knowledge or notice of the hazard of using it. (Cf. *Prescott* v. *Ralph's Grocery Co.*, *supra*, 42 Cal.2d 158, 163, citing Civ. Code, § 1714; *Florez* v. *Groom Dev. Co.*, *supra*, 53 Cal.2d 347, 358, 359; *Stricklin* v. *Rosemeyer*, 61 Cal.App.2d 359, 362 [142 P.2d 953].)

Use of the premises in spiked shoes will present a jury question on assumption of risk as well as contributory negligence, if in fact the jury finds the golf club was negligent. (*Hedding* v. *Pearson*, 76 Cal.App.2d 481, 485 [173 P.2d 382].) The case last cited holds (at p. 485) that the question whether a plaintiff was unreasonable in encountering the risk is a jury question. on which *Prescott* v. *Ralph's Grocery Co.*, *supra*, 42 Cal.2d 158 and *Florez* v. *Groom Dev. Co.*, *supra*, 53 Cal.2d 347, 358-359, and *Chance* v. *Lawry's, Inc.*, *supra*, 58 Cal.2d 368, 375-376 are authorities. (See also *Foster* v. *A. P. Jacobs & Associates*, 85 Cal.App.2d 746, 755 [193 P.2d 971].)

In the application of all three approaches the courts heretofore have developed invitor-invitee doctrines which we conclude have not been abrogated:

(a) the doctrine that forgetfulness of a known danger is not negligence unless it shows a want of ordinary care on the part of a plaintiff. (*Austin* v. *Riverside Portland Cement Co.*, 44 Cal.2d 225 [282 P.2d 69].)

(b) the doctrine that there is no negligence if there is a sudden abstraction of attention and thereby forgetfulness of a known danger. (*Gibson* v. *County of Mendocino*, *supra*, 16 Cal.2d 80.) The forgetfulness of known danger must amount to an absence of ordinary care under the circumstances, before it is contributory negligence. (*Perkins* v. *Sunset Tel. & Tel. Co.*, 155 Cal. 712, 722 [103 P. 190].)

(c) the doctrine that necessity may make the invitee's use of property, in spite of its known danger. no breach of the user's duty of ordinary care. (*McAllister* v. *Cummings*, 191 Cal.App.2d 1 [12 Cal.Rptr. 418].)

(d) the doctrine that whether to choose to travel over a known unsafe way where a safe one is available is negligence

is to be determined by the trier of the fact. (*Douglas* v. *Southern Pac. Co.*, 151 Cal. 242 [90 P. 538]; *Kaukonen* v. *Aro, supra*, 142 Cal.App.2d 502.)

(e) the doctrine that the trier of the fact must determine any conflict as to whether or not the danger was obvious to the invitee. (*Austin* v. *Riverside Portland Cement Co., supra*, 44 Cal.2d 225, 234; *Dingman* v. *A. F. Mattock Co., supra*, 15 Cal.2d 622, 625; *Revels* v. *Southern Cal. Edison Co.*, 113 Cal. App.2d 673, 680 [248 P.2d 986]; *Pauly* v. *King, supra*, 44 Cal.2d 649, 657; *Tuttle* v. *Crawford*, 8 Cal.2d 126, 130 [63 P.2d 1128] [whether she was negligent in presuming a dark space on floor with vegetable particles on it]; *Chance* v. *Lawry's Inc., supra*, 58 Cal.2d 368, 374.)

(f) the doctrine that the possessor of land is not an insurer of the safety of its users. (*Mautino* v. *Sutter Hospital Assn., supra*, 211 Cal. 556; *Taylor* v. *Centennial Bowl, Inc., supra*, 65 Cal.2d 114; *Henderson* v. *McGill*, 222 Cal.App.2d 256 [34 Cal.Rptr. 897].)

▮ Appellant assigns as error the receipt of testimony of Mr. Scannell, over objection. that he had not been notified of any accidents concerning this particular area in question prior to that of Mrs. Beauchamp, and that 3,500 to 4,000 people traverse it each month.

"The operation of an instrumentality for a reasonable period of time under similar circumstances may have a tendency to show that in the ordinary course of things, an accident not having previously occurred, there is no reason to anticipate one. This rule arises upon the theory of probable responsibility. Such evidence would simply be a circumstance to consider with other evidence in the case." (*City of Oakland* v. *Pacific Gas & Elec. Co.*, 47 Cal.App.2d 444, 448 [118 P.2d 328].)

Where foreseeability of harm is an element in establishing a defendant's duty as a person using ordinary care, the absence of accidents of the type here concerned is just as much a factor as his knowledge or notice that there were such incidents. There is some reluctance to accept such negative evidence, perhaps due to the absence of a showing that the same or similar conditions existed. (*Sellars* v. *Southern Pac. Co.*, 33 Cal.App. 701, 709 [166 P. 599]; *Lim Ben* v. *Pacific Gas & Elec. Co.*, 101 Cal.App. 174, 182 [281 P. 634].)

There are complex situations where identity of circumstance would be difficult to establish, and would lead to many collateral questions. But where a static condition of a street,

highway or sidewalk only is involved, the varieties of conditions of passage of persons or vehicles over it are relatively uniform.

The modern science of statistics indicates that the larger the sample, the more individual circumstances and methods of use are reflected therein. If 4,000-5,000 golfers a month wearing spiked shoes passed over a given spot without incident, the evidence would seem pertinent as one circumstance of the defendant's foreseeability of the existence or nonexistence of an unreasonable risk of harm to the users.

Under Evidence Code sections 210, 350 and 351 such evidence now is admissible for that purpose, as section 351 according to the Law Revision Commission, abolishes all limitations on the admissibility of relevant evidence except those based upon a constitution or statute.

Whatever caveats have been expressed against receipt of such evidence, the appellate courts continually considered it. Some random examples chanced upon are: *Adams* v. *Southern Pac. Co.*, 4 Cal.2d 731, 740-741 [53 P.2d 121] [the absence of accidents at railroad crossing for two years held sufficient to raise an evidentiary conflict as to danger] ; *Ziegler* v. *Santa Cruz City High School Dist.*, *supra*, 168 Cal.App.2d 277, 280 [335 P.2d 709] [but the fact of no prior accidents is not conclusive (*Id.* p. 285)] ; *Richter* v. *Adobe Creek Lodge*, 143 Cal. App.2d 514, 517 [299 P.2d 941] [noting ''especially in view of the lack of any similar occurrence during the four or five years this piano had been on the stage''] ; *Howard* v. *City of Fresno*, 22 Cal.App.2d 41, 45 [70 P.2d 502] [trash burning area maintained for six years without mishaps] ; *McKinney* v. *City & County of San Francisco*, 109 Cal.App.2d 844, 847 [241 P.2d 1060] [no accident at bear cage in zoo for six years with 50,000 persons a week at the zoo] ; *Ford* v. *Riverside City School Dist.*, 121 Cal.App.2d 554, 562 [263 P.2d 626] [tree in place for many years, no prior injuries from thorns thereof] ; *Union Oil Co.* v. *Rideout*, 38 Cal.App. 629, 640-641 [177 P. 196] [safe use of wharf apron by plaintiff's truck driver at least 25 times in preceding two years] ; accord: *Mullen* v. *Sensenbrenner Mercantile Co.*, (Mo.) 260 S.W. 982, 33 A.L.R. 176; *Lawson* v. *D. H. Holmes Co.* (La.App.) 200 So. 163; *Tryon* v. *Chalmers*, 205 App.Div. 816 [200 N.Y.S. 362] ; *Wyzga* v. *David Harley Co.*, 60 R.I. 480 [199 A. 452] ; *Godfrey* v. *Connecticut Co.*, 98 Conn. 63 [118 A. 446, 448] [use by 25,000 persons without injury] ; *Kansier* v. *City of Billings*, 56 Mont. 250 [184 P. 630] ; *Evansen* v. *Grande Ronde Lbr.*

*Co.,* 77 Ore. 1 [149 P. 1035] ; *Haleem* v. *Gold,* 164 N.Y.S. 119 [platform used for 25 years without known injury] ; *Erickson* v. *Walgreen Drug. Co.,* 120 Utah 31 [232 P.2d 210, 31 A.L.R. 2d 177] ; *Lappin* v. *St. Louis Nat. League Baseball Club, supra,* 33 S.W.2d 1025 [exit used without slip and fall for 12 years] ; *Tovey* v. *G. E. Lothrop Theatres, Co.,* 288 Mass. 346 [193 N.E. 19] [200 people over aisle].)

It is true, of course, that the absence of other accidents is not proof per se that no dangerous condition existed. (*Murphy* v. *County of Lake,* 106 Cal.App.2d 61, 65 [234 P.2d 712] ; *Thompson* v. *B. F. Goodrich Co.,* 48 Cal.App.2d 723 [120 P.2d 693].)

Such evidence is received in meeting a prima facie case under the doctrine of res ipsa loquitur, or a claim that an instrumentality had previously been used for a reasonable number of times and found safe. (*Khanoyan* v. *All American Sports Enterprises, Inc.,* 229 Cal.App.2d 785 [40 Cal.Rptr. 596].) Appellant here urged res ipsa loquitur applied in resisting the nonsuit. It cannot reasonably be asserted that such evidence has probative force in such instances, but not as a circumstance relative to the risk and foreseeability of harm in others.

If the period of time and the number of users of the premises are sufficiently great that the trial court concludes the evidence is reliable, it is admitted. But such evidence need not be admitted if there would be confusion of collateral issues, because of marked differences in the circumstances of use. (Evid. Code, § 352.)

There is no merit in appellant's contention that the judgment must be reversed because the record does not include the motion on which the nonsuit was based, and that the grounds for granting it are not revealed as allegedly required by Code of Civil Procedure sections 581c and 581d. The motion is before us in the reporter's supplemental transcript. The cited sections do not contain such a requirement. Such a motion operates generally as a demurrer to the sufficiency of the evidence. By granting the motion, with no further specification, the court found that as a matter of law there was no evidence of sufficient substantiality to sustain plaintiff's claim to damages. (*Reuther* v. *Viall,* 62 Cal.2d 470 [42 Cal.Rptr. 456, 398 P.2d 792].) Indeed, appellant's brief contends ''There was sufficient evidence in the record to allow the jury to decide the case.''

Appellant's strained effort to raise some speculative infer-

ence that Mrs. Beauchamp could have slipped upon grass cuttings left on the veranda by previous users finds no substantial support in the evidence. By their terms, and factually, the California Administrative Code, title 8, sections 3250 and 3257 are clearly not applicable to the situation at hand. Nor does the record supply the necessary foundation to consider any ordinance provisions claimed to be applicable, by way of judicial notice or otherwise. (Evid. Code, § 459.)

The judgment is reversed.

Draper, P. J., and Brown (H. C.), J., concurred.